**Mary Sofia**
25 NW 23rd Place, Suite 6 #399
Portland, Oregon 97210
Telephone: 503-374-6542
Mary@SofiaDefense.com
www.sofiadefense.com
Oregon State Bar No. 111401

**Joy Bertrand, Esq.**
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone: 602-374-5321
Fax: 480-361-4694
joyous@mailbag.com
www.joybertrandlaw.com
Arizona State Bar No. 024181
(*pro hac vice* pending)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| Liese Behringer,<br>    Plaintiff,<br><br>    v.<br><br>City of Ashland;  Tighe O'Meara, Chief of City of Ashland Police Department, in his official capacity; Justin McCreadie, in his individual capacity;  Jane and John Doe Ashland Police Officers, in their individual capacities; Providence Health Care; Jane and John Roe Providence Health Care employees;  ABC Corporations I-X;  Black And White Partnerships I-X; and Sole Proprietorships Or Trusts I-X,<br><br>    Defendants. | **COMPLAINT**<br><br>**(Jury Trial Demanded)** |

NOW COMES the Plaintiff, Liese Behringer, by her attorneys, Mary Sofia and Joy Bertrand, to allege this complaint.  She further submits the following:

## INTRODUCTION

1.    In 2017, the Ninth Circuit Court of Appeals ruled that law enforcement's "forceful use of a catheter is a 'gross personal indignity' far exceeding that involved in a simple blood test."[1]

2.    More than two years after the Ninth Circuit's decision, the Defendants, in the course of collecting evidence in support of a misdemeanor driving under the influence charge – in addition to taking two blood samples -- stripped her from the waist down, opened her legs, exposed her genitals, and forced a catheter into Liese Behringer.

3.    The Defendants did nothing to mitigate the pain of this procedure.

4.    The Defendants proceeded with this procedure, despite Ms. Behringer's willingness to submit a urine sample, just not in the presence of a male police officer.

5.    As a result of this barbaric practice, which Defendant Providence Health Care admits it is "often asked to do," Ms. Behringer sustained a urinary tract infection and significant emotional injury.

---

[1] *Ellis v. City of San Diego*, 176 F.3d 1183, 1192 (2017).

6.      This lawsuit demands the following:

   a.      Injunctive relief, ordering the Ashland Police Department and Providence Health Care to immediately cease this practice;

   b.      Compensation for Ms. Behringer's injuries;

   c.      This lawsuit also demands punitive damages, since it is clear that prior Ninth Circuit precedent finding this practice unconstitutional in these circumstances has not been sufficient for the Defendants to cease this practice.

## PARTIES

7.      The Plaintiff, Liese Behringer, presently resides in Ashland, Oregon.

8.      Defendant City of Ashland is a political subdivision of the State of Oregon.

9.      Defendant Tighe O'Meara is the current Chief of the Ashland Police Department.  He oversees the Ashland Police Department's operations and is responsible and accountable to ultimate personnel decisions for the Department. He is sued here in this official capacity.

10.      Providence Health Care is a Catholic health care system that operates in five states.

11.      Providence Health Care operates eight hospitals and dozens of clinics and medical laboratories in Oregon.

12.    Providence Health Care states its mission is "As expressions of God's healing love, witnessed through the ministry of Jesus, we are steadfast in serving all, especially those who are poor and vulnerable."[2]

13.    Providence Health Care defines its core values as "Compassion, Dignity, Justice, Integrity."[3]

14.    As a medical provider, Providence Health Care and its employees have a duty to prevent "deliberate, unnecessary, or avoidable harm to patients."[4]

15.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does and Roes, inclusive, and each of them, are unknown to Plaintiff, who thereby sued these Defendants by such fictitious names, and will ask leave of this Court to amend this Complaint when the true names are ascertained. Plaintiff is informed and believes and on that basis alleges

---

[2]  Providence Health & Services Oregon and Southwest Washington, "About Providence Health & Services," available at https://oregon.providence.org (last visited October 6, 2021).

[3]  *Id*.

[4]  Katherine Ott, M.D., *et al*., "To Protect and Serve: The Ethical Dilemma of Allowing Police Access to Trauma Patients," Bulletin of the American College of Surgeons, October 4, 2017, available at https://bulletin.facs.org/2017/10/to-protect-and-serve-the-ethical-dilemma-of-allowing-police-access-to-trauma-patients (last visited October 17, 2021);  and see, Wall LL, Brown D. "Pharmaceutical Sales Representatives and the Doctor/Patient Relationship." *Obstet Gynecol*. 2002; 100(3):594-599.

that each Defendant named herein as Doe is responsible in some manner for the events and happenings referred to herein which proximately caused injury to Plaintiff hereinafter alleged.

16.    Plaintiff is informed and believes that the defendants named in this Complaint are liable to the Plaintiff for the injuries and damages alleged in this Complaint by virtue of said defendants' intentional conduct, reckless conduct, negligent acts or omissions, strict liability, vicarious liability, imputed liability, successor liability, and or other legal fault.

17.    Plaintiff is informed and believes that at the time of the harmful acts, omissions, breaches, and events alleged in this Complaint, each defendant was acting as the agent, employee, servant, partner, and or joint adventurer of the other, within the course and scope of that relationship, so as to render liable each such defendant's corresponding principal, employer, master, partner, or joint venturer.

18.    Each of these Defendants negligently breached their duty to the Plaintiffs and caused their damages.

## JURISDICTION AND VENUE

19.    The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343..

20.    Venue in this district is proper under 42 U.S.C. 2000e-5(f)(3), because the underlying acts of this complaint took place in the District of Oregon.

## PROCEDURAL HISTORY

21.    On April 29, 2020, the Plaintiff submitted a notice of claim to the City of Ashland.

22.    Due to the Covid-19 pandemic, the State of Oregon had extended statutes of limitations on tort claims.[5]

23.    The City denied the claim on or about August 20, 2020.

## SUPPORTING FACTS

24.     Forced catheterization is painful, humiliating and deeply degrading.

25.    Urinary catheterization should be avoided where possible, because of the risks it creates of injury to the person.

26.     Forced urinary catheterization has only a marginal advantage over a simple blood draw in detecting the prior use of alcohol and its residual presence in the body.

27.     Forced catheterization creates a risk of psychologically traumatizing a person.

28.    A large number of people arrested have post-traumatic stress disorder (PTSD).

---

[5]  Oregon HB 4212 Sect. 7(1).

29.    A substantial number of people with additional problems have a history of victimization or prior trauma.

30.    The more a person has been traumatized, the more likely that later trauma (such as by being forcibly catheterized) will cause an increase in their PTSD.

31.    A police officer has no way to tell whether a person who is being considered for forcible catheterization has or has not been physically or sexually traumatized, or suffers from PTSD.

32.    Forced catheterization has been widely used in some parts of Oregon in recent years.

33.    The threat of forced catheterization is commonly used in some parts of Oregon in recent years to motivate persons to provide coerced urine samples.

34.    A search warrant application, or a search warrant, that fails to disclose that it seeks forcible catheterization is a general warrant that lacks a sufficiently particularized description of the person or thing to be seized or the place to be searched.

35.    No search warrant application disclosed the physical or psychological risks of forcible catheterization, or the marginal benefit to society of forced catheterization.

36.    No search warrant application disclosed the potential for someone with PTSD by forced catheterization, or the potential of forced catheterization to inflict increasingly damaging symptoms of PTSD.

37.    State agents, including law enforcement officers, in multiple cities and counties in Oregon have conspired to attempt to rationalize, justify, and illegally forcibly catheterize drug suspects, and illegally coerce suspects to provide urine samples by threatening them with illegal forcible catheterization if they will not voluntarily provide a urine sample.

38.    The conspiracy resulted in violating the civil rights of everyone who is threatened with forcible catheterization or who was forcibly catheterized.

**The Forced Catheterization of the Plaintiff**

39.    The following events occurred on the evening of October 19, 2019.

40.    Ms. Behringer is a 64-year-old woman.  At the time of the events in this Complaint, she was about to turn 63.

41.    Currently, and at all times pertinent to the allegations in this Complaint, Ms. Behringer is disabled.  She also suffers from PTSD.

42.    Ms. Behringer requires an oxygen regulator to breathe.

43.    Ms. Behringer also requires several medications, which she carries in her purse.

44.    Defendant McCreadie initially stops Ms. Behringer because he suspects she is driving while impaired.

45.    When Defendant McCreadie stops Ms. Behringer, a handicapped parking decal was visible in her front window.

46.    Plaintiff's oxygen regulator is visible in the vehicle.

47.    Defendant McCreadie takes Ms. Behringer to the police station, where he demands that the Plaintiff provide a breath sample *via* a breath test.

48.    Plaintiff tries to provide a sample, but cannot, due to her health conditions.

49.    Upon her inability to give a portable breath sample, Defendant McCreadie demands that Ms. Behringer provide a urine sample. [6]

50.    Defendant McCreadie insists that she provide it in front of him.

51.    Ms. Behringer refuses to urinate in front of this male officer.

52.    This urine sample is in addition to the blood sample for which Defendant McCreadie seeks a warrant.

53.    McCreadie receives a warrant for Ms. Behringer's blood and urine.

54.    Blood samples are more accurate than urine samples in measuring intoxicants in a person's system.

55.    The urine sample was therefore entirely unnecessary.

_____

[6] ORS 813.100.

56.      McCreadie does not seek a warrant authorizing forced catheterization.

57.      Once he receives the warrant for "blood and urine samples," Defendant McCreadie transported Plaintiff to Providence Medford Medical Center.

58.      Ms. Behringer does not require medical care when McCreadie presents her at the hospital.

59.      Defendant McCreadie states to Ms. Behringer, in front of John and Jane Doe medical staff, in essence, "Do you know what they do to you if you don't urinate?"

60.      Defendant McCreadie stands directly in front of the Plaintiff, with at least the tacit, if not explicit permission of John and Jane Roe Medical Center staff, when Ms. Behringer was forcibly stripped from the waist down and catheterized.

61.      John and Jane Roe medical staff do nothing to protect Ms. Behringer's privacy.

62.      John and Jane Roe Medical Staff do nothing to mitigate the pain of the catheterization;

63.      As Defendant Jane and John Roe Medical Staff force the catheter into Ms. Behringer's urethra, she screams in pain and yells, "THIS IS RAPE!  THIS IS RAPE!"

64.      Providence Health Care then bills Ms. Behringer $1,100.24 for its barbaric treatment of her.

**Providence Health Care's Admission that Forced Catheterization for Law Enforcement is a Common Practice**

65.     After the forced catheterization, Ms. Behringer calls Providence Health

Care to complain about the dehumanizing treatment she received at Providence

Medford Medical Center.

66.     On February 20, 2020, Providence Health Care Patient Care Liaison Pamela

Morris responds to Ms. Behringer's complaint, writing:

> After receiving your call, our team, along with hospital leadership, began a review of your care to include your medical record, and care protocols for patients with your presentation. **Our review found the care appropriate as assisting law enforcement with evidence collection is something we are often asked to do.** If we can avoid taking part with this, we do. We will do a general standby in the area as a precaution but we do not inject ourselves unless it is necessary to protect the safety of our staff members. In this instance there was one police officer and one staff member, so the chance of injury increases. There is no written policy or protocol that specifically outlines what should be done in this process and when as our officers are asked to use a common sense approach to these situations.
>
> It is the expectation that our officers respect a patient's right to privacy. The process is unpleasant enough and we should make every effort to reduce the negative impact it can have on them. One of the ways we do this is turning our backs to the patient during the process if it is safe to do so. As it turns out this is not always the case. From all indications and information available to us, the officer's look into your eyes was incidental and had nothing to do with any mal intent. **It is believed that the Ashland police officer provided you multiple opportunities to comply with his orders. The officer advised you of the possible use of physical force to allow staff to complete the procedure.** You opted to comply, while the procedure was completed and the officer and security [sic] stood on the right hand side of the room with their backs turned to you to respect your privacy. (emphasis added)

67.    Providence Health Care has therefore admitted two ways in which it conspired with law enforcement to violate Ms. Behringer's civil rights:

    a.    It has admitted that forced catheterization of detained people is "something [it] is often asked to do" – and Providence Healthcare does it; and

    b.    Providence Health Care will put enforcing a law enforcement officer's unlawful request, to include using physical force, over a detained person's medical best interest.

68.    Providence Health Care's statement also shows that this a common police practice among local law enforcement, to include, but not be limited to the Ashland Police Department.

69.    Providence Health Care's statement regarding Ms. Behringer's compliance with the officer's unlawful demand confirms that it acted as an arm of the State when it conducted the forced catheterization on Ms. Behringer.

70.    The forced catheterization caused a painful urinary tract infection, for which Ms. Behringer had to seek additional medical care.

71.    The stripping of Ms. Behringer from the waist down, the forcible exposure of Ms. Behringer's genitals to all in the room, and the forced catheterization of Ms. Behringer caused her significant pain, suffering, and emotional distress, which continues with her to this day.

# PLAINTIFF'S CAUSES OF ACTION

## COUNT ONE
### CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (42 U.S.C. SECTS. 1983 and 1986)
### (ALL DEFENDANTS)

72.     Plaintiff re-alleges the above paragraphs as if fully realleged herein.

73.     State agents and law enforcement officers who have participated in this conspiracy include, but are not limited to the City of Ashland;  Tighe O'Meara;  Justin McReadie;  and Jane and John Doe Ashland Police Officers.

74.     The private entity and individuals who conspired with government actors to violate Ms. Behringer as Providence Health care and Jane and John Roe Medical Staff.

75.     The extent of the illegal conspiracy, includes, but is not limited to:  the warrantless, forcible catheterization of Ms. Behringer; the forcible catheterization of Ms. Behringer – regardless of whether or not a warrant has been issued; the threat of forcible catheterization when detained persons cannot or will not provide a urine sample; and the allowance of law enforcement in the treatment area during the forced catheterization.

76.     Defendants violated 42 U.S.C. § 1985(3) and 1986, by conspiring with each other for the purpose of depriving numerous people of the equal protection of the laws, and equal privileges and immunities under the laws;   and by engaging

therein to do, and causing to be done, acts in furtherance of the object of such

conspiracy, whereby others were injured in their person or property;  and by

depriving Ms. Behringer from having and exercising the rights and privileges of

citizens of the United States.

**COUNT TWO**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO**
**THE U.S. CONSTITUTION**
**(FORCED CATHETARIZATION)**
**(ALL DEFENDANTS)**

77.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

78.    Ms. Behringer's interests in privacy and security–and in particular the

privacy and security of the most private part of her body, her genitals both their

exterior and interior–outweigh society's interest (if society has any legitimate

interest in this conduct, considering the potential less invasive, less humiliating

alternatives)–in conducting the procedure under these circumstances.[7]

79.    Even with a warrant, forced catheterization is unconstitutional in the

context of the investigation of a misdemeanor driving under the influence

charge.

---

[7]  See *Winston v. Lee*, 470 U.S. 753 (1985).

80.    The stripping from the waist down and exposing of a suspect's genitals to police officers, followed by the insertion of a tube into their urethra and bladder is an extreme invasion of personal dignity.[8]

81.    The forced catheterization of a detained person in the course of investigating a misdemeanor driving under the influence allegation is grossly unreasonable.

82.    Such conduct violates the Fourth Amendment rights to privacy and to be free from unreasonable searches and seizures.

83.    Defendants acted with malice, oppression, and deliberate and reckless disregard for Plaintiff's rights.

84.    Defendants acted in accordance with their official and standard practices, policies, and procedures.

85.    Plaintiff is entitled to an award of punitive damages as the only way to punish defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

**COUNT THREE**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION**
**(EXCEEDING THE SCOPE OF THE SEARCH WARRANT)**

---

[8] *Ellis*, 173 F.3d 1192, also *Skinner v. Railway Labor Execs. Ass'n.*, 489 U.S. 602, 617 (1989) ("There are few activities in our society more personal or private than the passing of urine." (citation omitted)).

**(ALL DEFENDANTS)**

86.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

87.    Even if a warrant facially satisfies the particularity requirement, the police violate the Fourth Amendment when the scope of the search exceeds what the warrant permits.[9]

88.    A search warrant affidavit that does not disclose that it seeks forcible catheterization cannot constitutionally justify forcible catheterization.

89.    The particularity requirement of a search warrant application was violated for the search of Ms. Behringer's person.

90.    In no search warrant application or search warrant, did the police disclose to the Magistrate or Judge that forced catheterization was sought for Ms. Behringer.

91.    A search warrant that does not state that it authorizes forced catheterization does not do so.

92.    Defendants acted with malice, oppression, and deliberate and reckless disregard for Plaintiff's rights.

---

[9] *Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant ..., the subsequent seizure is unconstitutional without more.")

93.     Defendants acted in accordance with their official and standard practices, policies, and procedures.

94.     Plaintiff is entitled to an award of punitive damages as the only way to punish defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.


**COUNT FOUR**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**
**(EXCESSIVE FORCE)**

95.     Plaintiff re-alleges the above paragraphs as if fully realleged herein.

96.     The stripping from the waist down and exposing of a suspect's genitals to police officers, followed by the insertion of a tube into her urethra and bladder is an extreme invasion of personal dignity.[10]

97.     The forced catheterization of a detained person in the course of investigating a misdemeanor driving under the influence allegation is grossly excessive.

98.     Such conduct violates the Fourth Amendment rights to privacy and to be free from excessive force.

---

[10] *Ellis*, 173 F.3d 1192, also *Skinner v. Railway Labor Execs. Ass'n.*, 489 U.S. 602, 617 (1989) ("There are few activities in our society more personal or private than the passing of urine." (citation omitted)).

99.    Defendants acted with malice, oppression, and deliberate and reckless disregard for Plaintiff's rights.

100.    Defendants acted in accordance with their official and standard practices, policies, and procedures.

101.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

**COUNT FIVE**
***MONELL* LIABILITY**
**(DEFENDANT CITY OF ASHLAND)**

102.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

103.    The City's actions and violations of law set forth herein were part of policies that were unconstitutional.

104.    The City's actions and violations of law set forth herein were part of a deliberate choice by the entities to follow a course of action that was made from among various alternatives by city policymakers, including but not limited to the alternative of testing for the presence of alcohol or drugs by a blood sample, instead of through a urine sample obtained by forced catheterization.

105.    Even if the City's policies are deemed constitutional on their face, the City should have done more to prevent constitutional violations by their employees,

and a "policy" existed in that the inadequacies were a product of deliberate or conscious choice by policymakers.

106.    Even if the City's policies are deemed facially lawful, the City, acting through their policymakers, were deliberately indifferent to the constitutional rights their employees violated, as set forth herein.

107.    The City, and other government entities known and unknown to plaintiff, used inadequate training practices; were deliberately indifferent to the constitutional rights of plaintiffs and others, such that the failure to train reflects a deliberate or conscious choice by the entities; and the deficient training procedures actually caused constitutional injury to plaintiffs and many others like them.

108.    The City's constitutional violations set forth herein were more than a one-time occurrence, *i.e.*, the actions were taken in accordance with a policy or custom, and the entities failed to create a constitutional policy or custom despite a pattern of similar constitutional violations making additional policies necessary.

109.    The City's constitutional violations set forth herein were part of a widespread practice with the force of law.

110.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

## COUNT SIX
### *RESPONDEAT SUPERIOR* LIABILITY
### (PROVIDENCE HEALTHCARE)

111.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

112.    All acts and omissions attributed to Providence employees, contractors, and agents were committed within the scope of their employment with Providence Healthcare.

113.    All acts and omissions by Providence Healthcare's employees, contractors, and agents relevant to this complaint are the fault of Providence Healthcare.

114.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

## COUNT 7
### BATTERY
### (DEFENDANTS MCCREADIE, JANE AND JOHN DOE DEFENDANTS, JANE AND JOHN ROE DEFENDANTS, AND PROVIDENCE HEALTH CARE)

115.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

116.    The above-listed Defendants stripped Ms. Behringer from the waist down and catheterized Ms. Behringer, who presented with no medical need for a catherization.

117.    This painful, dangerous procedure was conducted without Ms. Behringer's consent.

118.    The above-listed Defendants conducted this procedure with the intent to execute it.

119.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

**COUNT 8**
**ASSAULT**
**(DEFENDANTS MCCREADIE, JANE AND JOHN DOE DEFENDANTS, JANE AND JOHN ROE DEFENDANTS, AND PROVIDENCE HEALTH CARE)**

120.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

121.    The above-listed Defendants stripped Ms. Behringer from the waist down and catheterized Ms. Behringer, who presented with no medical need for a catherization.

122.    This painful, dangerous procedure was conducted without Ms. Behringer's consent.

123.    The above-listed Defendants conducted this procedure with the intent to execute it.

124.    The above-listed Defendants conducted this procedure with the intent to cause Ms. Behringer apprehension and fear that the procedure would occur.

125.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

**COUNT 9**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(DEFENDANTS MCCREADIE, JANE AND JOHN DOE DEFENANTS, JANE AND JOHN ROE DEFENDANTS, AND PROVIDENCE HEALTH CARE)**

126.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

127.    The above-listed Defendants intentionally conducted this forced procedure on Ms. Behringer, with the intention of humiliating and punishing her for her "refusal" to urinate in front of a man;

128.    The above-listed Defendants' conduct caused Ms. Behringer severe emotional distress;

129.    The above-listed Defendants' conduct was an extraordinary transgression of the bounds of socially tolerable behavior;

130.    Plaintiff is entitled to an award of punitive damages as the only way to punish Defendants and to deter them from continuing to employ these same wrongful methods and tactics against other people.

**COUNT TEN**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(DEFENDANTS MCCREADIE, JANE AND JOHN DOE DEFENDANTS, JANE AND JOHN ROE DEFENDANTS, AND PROVIDENCE HEALTH CARE)**

131.    Plaintiff re-alleges the above paragraphs as if fully realleged herein.

132.    Each of the above-named Defendants had a duty to protect the rights of a person in their care and custody.

133.    Each of the above-named Defendants had a duty to "be aware of and guard against particular adverse psychological reactions or consequences to medical procedures."[11]

134.    Each of the above-named Defendants had a duty not to force a painful, dangerous medical procedure on a person in their care and custody.

135.    Each of the above-named Defendants breached this duty by stripping Ms. Behringer from the waist down, exposing her genitals to those in the room, and conducting a forced catheterization on her.

---

[11] *Curtis v. MRI Imaging Services II*, 327 Or. 9, 14-15 (1998).

136.    This conduct caused physical injury in the form of excruciating pain and a urinary tract infection.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

1.    Injunctive relief declaring defendants' conduct unconstitutional and barring such conduct in the future;

2.    Compensatory and punitive damages;

3.    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

4.    Such other and further relief as the Court deems just.

WHEREFORE, Plaintiff requests this Court to enter a Judgment in her favor.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY

Respectfully submitted this Eighteenth day of October, 2021.

s/Mary Sofia
Mary Sofia
Attorney for Plaintiff

s/Joy Bertrand
Attorney for Plaintiff
(*pro hac* vice pending)