**Joy Bertrand, Esq.**
joyous@mailbag.com
PO Box 2734
Scottsdale, Arizona 85252-2734
Telephone:  602-374-5321
Fax:  480-361-4694
www.joybertrandlaw.com
Arizona State Bar No. 24181
(admitted *pro hac vice*)

**ATTORNEY FOR:  PLAINTIFF**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| .<br>Liese Behringer,<br>Plaintiff,<br><br>v.<br><br>City of Ashland, et al.,<br>Defendants. | Case No. 1:21-CV-01520-CL<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT PROVIDENCE HEALTH & SERVICES MOTION TO DISMISS**<br><br>**(REQUEST FOR ORAL ARGUMENT)** |

NOW COMES the Plaintiff, Liese Behringer, by her attorney, Joy Bertrand, to submit her Response in Opposition to Defendants' Providence Health Care's Motion to Dismiss.[1]  As further grounds therefore, Ms. Behringer submits the following:

---

[1] ECF Doc. 11.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 4

UNDERLYING FACTS AND PROCEDURAL HISTORY ......................................... 5

ARGUMENT .................................................................................... 6

I.  The Complaint Describes Egregious Violations of the Plaintiff's
Fourth and Fourteenth Amendment Rights. ............................................... 9

A.  The Defendant's Citations Do Not Support the Conclusion that No
Constitutional Right was Violated. .................................................... 9

B. The Forced Catheterization Exceeded the Scope of the Warrant. ................... 12

C.  The Forced Catheterization of the Plaintiff, to Include Restraining Her
and Stripping the Plaintiff Naked From the Waist Down in Front of the Male
Officer Constitutes a Separate Constitutional Violation of Excessive Force.... 12

D.  To the Extent the Hospital Defendants Claim Qualified Immunity,
it is not Available to Them. ......................................................... 13

II.  The Warrant for a Urine Sample Does Nothing to Mitigate
any of the Defendants' Liability. .................................................... 14

III.  The Hospital Defendants' Active Participation in Stripping
Ms. Behringer from the Waist Down, While a Male Police Officer
Watched, and Forcibly Catheterizing her was not Medically Acceptable. .......... 15

IV.  Private Medical Providers Can be Subject to Claims of
Constitutional Violations. ........................................................... 19

V.  The Individual Hospital Defendants' Insistence that the Plaintiff
Show that the They Followed a Specific Hospital Policy Fails as a Matter
of Law. .............................................................................. 20

VI.  The Complaint Demonstrates that the Hospital Maintained an
Unconstitutional Policy, Pattern, or Practice Under *Monell*. .................... 22

A.  The Complaint Supports a <u>*Monell*</u> Claim Against the Hospital. ........ 22

1. Existence of a Policy. .................................................................................. 23

2. Deliberate Indifference to Constitutional Rights of Others................................ 24

3. Ratification ................................................................................................ 25

*B. The Complaint States Facts in Support of a Pattern and Practice, Constituting a Policy.* ............................................................................... 25

*C. The Complaint States Facts in Support of the Hospital's Ratification of the Conduct and, Thus, a Policy.* ................................................................ 26

VII.    Taking the Allegations in the Complaint as True, the Hospital Defendants Knowingly Conspired to Violate Ms. Behringer's Constitutional Rights. ....................................................................................................... 26

CONCLUSION .............................................................................................. 29

CERTIFICATE OF COMPLIANCE ..................................................................... 30

CERTIFICATE OF SERVICE............................................................................. 31

## INRODUCTION

The Complaint in this matter can be organized into two sets of Plaintiffs: the City of Ashland and its employees and Providence Health Systems and its employees (hereinafter "the Hospital" or "the Hospital Defendants"). The Plaintiff's Complaint alleges that both groups are culpable under 42 U.S.C. 1983 and Oregon state law for forcibly catheterizing her in the course of a misdemeanor driving under the influence investigation – despite already having procured her blood.

The Hospital Defendants seek dismissal from the Complaint, because they assert, in essence, that they were merely providing a medical procedure and, therefore, cannot be held responsible for its Constitutional consequences.

The gravamen of this issue is:

This court can only dismiss a complaint pursuant to Rule 12(b), if it appears beyond doubt that that the plaintiff can prove no set of facts in support of her claim that would entitle to relief. Here, the Complaint outlines the deliberate choice of medical providers to conduct a painful, dangerous catheterization of a woman at the behest of law enforcement, with no warrant authorizing the search. Does the Complaint state claims entitling her to relief against the Hospital Defendants?

The answer is "Yes."

This Response addresses the arguments asserted by the Hospital Defendants in their Motion to Dismiss. Plaintiff will be lodging forthwith an amended Complaint to correct and clarify some of details that may streamline the Court's review of the Plaintiffs' claims against them.

## UNDERLYING FACTS AND PROCEDURAL HISTORY

The Plaintiff alleges that, after she was arrested for suspected driving under the influence, arresting officer had her forcibly catheterized for a urine sample, despite also procuring a blood sample.[2]  While the officer did receive a search warrant for a urine sample, the search warrant did not authorize catheterization.[3]  The officer could not have catheterized the plaintiff by himself. The Hospital Defendants assisted him.  The Hospital Defendants provided no pain mitigation;  they allowed the arresting officer to stand at the end of the hospital table, while the Plaintiff was forcibly stripped from the waist down; they forcibly opened her legs, exposing her genitals, and catheterized her. [4]

As it pertains to the Hospital Defendants, current Complaint charges the in Counts One through Four with violating the Plaintiff's civil rights under the Fourth and Fourteenth Amendments of the United States Constitution.  Count One alleges the conspiracy to deprive her of her civil rights, by agreeing to conduct the forced unconstitutional catheterization.[5]  Count Two alleges that the Defendants violated the Fourth and Fourteenth Amendment rights by

---

[2]  ECF Doc. 1 at 9.

[3]  *Id*. at 9-10.

[4]  *Id*. at 10.

[5]  *Id*. at 13.

conducting the forced catheterization.[6]  Count Three alleges that the Defendants

violated the Fourth and Fourteenth Amendment by using excessive force to

execute the search warrant.[7]  Count Four alleges that the Defendants violated the

Fourth and Fourteenth Amendment by using excessive force to execute the

search warrant.[8]  The Complaint also alleges state law claims of battery, assault,

and infliction of emotional distress.[9]

The Hospital Defendants have moved to dismiss the constitutional counts

against them.[10]  They also assert that they are immune from liability under state

statute, which would, apply to the state court counts.[11]

## ARGUMENT

A court may not dismiss a complaint for failure to state a claim "unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his

claims which would entitle him to relief."[12]  Indeed, though " 'it may appear on

---

[6]  *Id*. at 14.

[7]  *Id*. at 15.

[8]  *Id*. at 17.

[9]  *Id*. at 20-23.

[10]  ECF Doc. 11.

[11]  *Id*. at 12.

[12]  *Barnett v. Centoni,* 31 F.3d 813, 813 (9th Cir. 1994) (citing *Buckey v. County of Los Angeles,* 957 F.2d 652, 654 (9th Cir. 1992)).

the face of the pleadings that a recovery is very remote and unlikely[,] . . .that is not the test.' "[13]  "'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' "[14]

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  Dismissal under this rule is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."[15]

The Ninth Circuit has stated that, at the Rule 12 stage, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims."[16]  The Court determines whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be provided in support of plaintiff's claims.[17]

---

[13] *Gilligan,* 108 F.3d at 249 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

[14] *Id.*

[15] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[16] *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).

[17] *Id.*

*Behringer v. City of Ashland, et al.*
Response to Hospital Defendants' Motion to Dismiss

Rule 12(b)(6) works in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[18] The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim."[19] "The federal rules require only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"[20] "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim."[21]

Under Fed.R.Civ.P 8(a)(2), a claim for relief requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  This is "in order to give the defendant fair notice of what the claim is and the ground upon which it rests."[22]  Thus, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23]

---

[18]  5A Charles A. Wright & Arthur Miller, Federal Rules of Civil Procedure Section 1356 (1990).

[19]  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

[20]  *Id*. at 248.

[21]  *Id.* at 249 (quotation marks omitted).

[22]  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Ninth Circuit reviews a district court's dismissal under 12(b) *de novo*.[24]

## I.  The Complaint Describes Egregious Violations of the Plaintiff's Fourth and Fourteenth Amendment Rights.

The Complaint sets forth three, distinct Constitutional rights that the Defendants violated:  the right to be free from unreasonable searches;[25]  the right to be free from a search that exceed the scope of a search warrant;[26]  and the right to be free from excessive force in the course of executing a search.[27]

### A.  The Defendant's Citations Do Not Support the Conclusion that No Constitutional Right was Violated.

Before addressing the specific constitutional tenets the Defendants violated, the Plaintiff notes the decisions from outside of the Ninth Circuit the Defendants cite do not support their assertions.

The *Sparks* case from the Seventh Circuit involved a sentenced inmate at a correctional facility.[28]  The decision also noted that Sparks abandoned his Eighth Amendment claim that would have addressed the constitutionality of the catheterization in a prison setting.  In fact, seven months before the Defendants

---

[24]  *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir. 2012).

[25]  ECF Doc. 1 at 14.

[26]  *Id*. at 15.

[27]  *Id*. at 17.

[28]  71 F.3d 259 (7th Cir. 1995).

catheterized Ms. Behringer, another federal court in Indiana denied summary

judgment on qualified immunity for the forced catheterization of a DUI

suspect.[29]

The Defendants cite *Lockhard v. City of Lawrenceburg*[30] in support of their

apparent argument that case law surrounding forced catheterizations is

unresolved.  The Defendants ignore, however, that subsequent decisions have

noted distinguished *Lockhard*.  For example, the Northern District of Indiana

ruled six years later:

> in [*Lockhard*] the court never reached the first prong of qualified immunity:
> whether or not there was a violation . . . Rather, the court held it was not
> clearly established that a Fourth Amendment violation occurred where
> defendants had obtained a search warrant stating "[y]ou are hereby
> authorized and ordered ... to obtain and remove a ... urine sample."[31]

That court then denied qualified immunity, finding:

> Meanwhile, the *Elliott* case, discussed above, is a closely analogous case to
> our facts, in which the court did reach a conclusion on the first prong of
> qualified immunity: concluding that a violation did occur. *Elliott*, 686 F.
> Supp. 2d 840 (S.D. Ind. 2010). In that case the district court denied
> qualified immunity for an officer, finding the violation fell into the
> "obvious category" where an officer ordered a plaintiff to submit to
> a catheterization, against his will, and without the issuance of a search
> warrant giving specific authorization. *Id.*

---

[29]  *Ballheimer v. Batts*, 2019WL1243061 at *9 (S.D. Ind. 2019).

[30]  815 F.Supp.2d 1034, 1046 (S.D. Ind. 2011).

[31]  *Clark v. Djukic*, 2017WL4278039 (N.D. Ind. 2017), applying *Elliot v. Rush Cty. Ind.*,
686 F.Supp.2d 840 (S.D. Ind. 2010).

The court here agrees and finds that Djukic's alleged violation was similarly obvious, when the facts are viewed in the light most favorable to plaintiff. Additionally, the existence of *Elliott* itself demonstrates that a closely analogous case had clearly established Djukic's actions as a constitutional violation. Furthermore, *Elliott* does not stand alone, as the court there recognized a "trend in the case law recognizing the right of all citizens to be free from unwarranted medical procedures without the benefit of a search warrant authorized by a detached, neutral judicial officer.[32]

In addition to this detour to the Seventh Circuit forced catheterization jurisprudence, the Defendants also cite a case from the District of South Dakota that in no way supports their position. *Riis v. Shaver* found that forced catheterizations pursuant to search warrants were unreasonable.[33]  Applying the factors set forth in *Schmerber v. California*,[34] the court wrote:

> A balancing of the *Schmerber* factors indicates that the catheterizations violated the Fourth Amendment.  The first factor does not count much in either party's favor, because although the catheterizations posed some risk to the Plaintiffs' health and safety, this risk was not great.  But the unreasonableness of the Defendants' conduct becomes clear under the second and third *Schmerber* factors.  Defendants' need to obtain the Plaintiffs' urine to prove a low-level drug crime did not justify subjecting the Plaintiffs to involuntary catheterization, a highly invasive—and in these cases—degrading medical procedure.[35]

---

[32]  *Id.*

[33]   458 F.Supp.3d 1130, 1176.

[34]  384 U.S. 757 (1966).

[35]  *Id.*

The Defendants appear to focus only on the reasonableness of the catheterization, itself.  As discussed in *Riis*, the use of this procedure in the investigation of a "low level" crime, such as misdemeanor DUI, is unreasonble.

The Hospital Defendants make no effort to address the scope of the warrant and the force used to execute the warrant, which comprise separate constitutional violations. In an abundance of caution, because the Hospital Defendants' argument is not clear, the Plaintiff addresses each of the violations described in the Complaint.

B.    *The Forced Catheterization Exceeded the Scope of the Warrant.*

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of a relevant exception from the warrant requirement, the subsequent seizure is unconstitutional, without more."[36]

The Complaint alleges that the warrant allowed for a "urine sample," but did not authorize forced catheterization to collect it.[37]  Exceeding the scope of the search warrant constitutes a distinct violation of the Fourth Amendment.

C.    *The Forced Catheterization of the Plaintiff, to Include Restraining Her and Stripping the Plaintiff Naked From the Waist Down in Front of the Male Officer Constitutes a Separate Constitutional Violation of Excessive Force.*

---

[36] *Horton v. California*, 496 U.S. 128, 140 (1990).

[37]  ECF Doc. 1 at 9-10, Paras. 53-57.

"Officers may only use such force as is 'objectively reasonable' under the circumstances."[38]  Even if an initial seizure is found to be reasonable, officers still can be found to have used excessive force within the seizure.[39]  Defendants also can be liable for excessive force if they "had reason to know ... that excessive force was being used" and "had a realistic opportunity to intervene" in the excessive force being used and "had a realistic opportunity to intervene to prevent the harm from occurring."[40]  Here, even if the Defendants can assert some protection based on the existence of a warrant, the Complaint alleges a discrete Fourth Amendment violation, based on the Defendants' violent, barbaric conduct in executing the search.

D.    *To the Extent the Hospital Defendants Claim Qualified Immunity, it is not Available to Them.*

To the extent the Hospital Defendants have made a poorly-formed qualified immunity claim, the Plaintiff notes that three factors preclude the Hospital Defendants from asserting qualified immunity.  First, private actors

---

[38]  *Jackson v. City of Bremerton,* 268 F.3d 646, 651 (9th Cir. 2001)(citing *Graham v. Connor,* 490 U.S. 386, 397 (1989)).

[39]  *Boyd v. Benton County*, 374 F.3d 773, 779-80 (9th Cir. 2004), citing *Chuman v. Wright,* 76 F.3d 292, 293 (9th Cir. 1996) (excessive force claim recognized where officers stormed residence and caused unnecessary property damage during search).

[40]  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

cannot assert qualified immunity.[41]  Second, qualified immunity is unavailable to

*Monell* defendants.[42]  Third, the Hospital Defendants' qualified immunity claim

also is unavailable to answer the state law counts in the complaint.[43]

## II.    The Warrant for a Urine Sample Does Nothing to Mitigate any of the Defendants' Liability.

The Defendants cannot hide behind the skirts of the warrant for the bodily

substance.  The Complaint specifically states that the warrant provided for

"blood and urine samples," but did not provide for catheterization to collect the

urine.[44]  The Defendants can make no showing that they had a warrant to

conduct the procedure.

Moreover, the mere existence of a search warrant cannot absolve

unreasonable conduct in executing the search warrant.  In *Winston v. Lee*, the

Supreme Court found surgery to remove a bullet as evidence was unreasonable,

despite the existence of a search warrant.[45]  Here, taking the allegations in the

Complaint as true, the Hospital Defendants actively participated in the

unreasonable execution of a search warrant for a urine sample.

---

[41] *Richardson v. McKnight*, 521 U.S. 399, 404 (1997).

[42] *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016).

[43] *Eidson v. Owens,* 515 F.3d 1139, 1145 (10th Cir. 2008).

[44] ECF Doc. 1 at 10, Paras. 56-57.

[45] 470. U.S. 753, 767 (1985).

The Complaint maintains that this method of "collection" of the urine sample constituted excessive force, which is a stand-alone claim of the violation of the Fourth Amendment in the Complaint.[46]  A proper consideration of whether or not force is excessive requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.[47]  That type of fact-intensive analysis is a jury question, improper at the Rule 12 stage of this case.

### III.    The Hospital Defendants' Active Participation in Stripping Ms. Behringer from the Waist Down, While a Male Police Officer Watched, and Forcibly Catheterizing her was not Medically Acceptable.

The medical acceptability of Defendants' conduct was medically acceptible is inherently a jury question that likely can only be resolved by a jury. The Defendants asks this Court to rule that its staff participating in a painful, invasive, dangerous procedure that a court did not authorize is medically acceptable.  They cite no authority in support of this position.

The Defendants' unsupported assertion is contradicted by medical and legal publications, all published before October 2019.  For example, in September

---

[46] ECF Doc. 1 at 17.

[47] *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

2016, Harvard Law School published a specific warning about hospitals assisting

in the execution of search warrants via invasive measures, citing a lawsuit

against a hospital for assisting U.S. CBP with a body cavity search that resulted

in a $1.1 million settlement with the hospital.[48]  The article noted:

> Not only are hospitals and medical professionals not required to assist
> with invasive searches, but as the case of Jane Doe demonstrates, they can
> be liable if they help in searches where they shouldn't.  They aren't agents
> of the state, and therefore are neither compelled to perform any actions
> pursuant to a law enforcement request or search warrant nor legally
> protected if they violate someone's rights while assisting in the execution
> of such a request or warrant.[49]

In fact, three years before the Defendants' catheterized Ms. Behringer, medical

literature noted that medical providers **can *refuse*** to assist law enforcement

with an invasive search.[50]

    **Six years** prior to the events in this case, The Oregon Association of

Hospitals issued, "HIPAA and Law Enforcement: Guidelines for Release of

---

[48]  Shailin Thomas, "Hospitals Should Think Before Performing Searches for Law
Enforcement," Bill of Health, September 12, 2016, available at
https://blog.petrieflom.law.harvard.edu/2016/09/12/hospitals-should-think-before-
performing-searches-for-law-enforcement/ (last visited March 9, 2022).

[49] *Id.*

[50]  See, *e.g.*, Charles Pilcher, MD FACEP, "Perspective: Body Cavity Search Warrants.
Are the Enforceable?" May 2016, available at
https://pilchermd.com/2016/05/02/perspective-must-physician-comply-body-cavity-
search-warrant/ .

*Behringer v. City of Ashland, et al.*       16
Response to Hospital Defendants' Motion to Dismiss

Protected Health Information (PHI) in Oregon."[51]  That publication reminded

hospitals that, "A hospital's first obligation to all patients is caring for their

medical needs. When a patient is also involved in a criminal investigation, either

as a suspect, witness or victim, that obligation remains the priority."[52]  The

Hospital cannot claim that, as a matter of law, its conduct in assisting law

enforcement in this barbaric, painful event was conclusively medically

acceptable.

These authorities parallel the publication cited in the Complaint at Page 4,

footnote 4 that further warned medical providers about placing the State's law

enforcement interests above the interests of their patients.  The American College

of Surgeons' Bulletin published its article on October 4, 2017, in which it

specifically stated that the interests of a patient supersede law enforcement's

interest in investigating crimes:

> In the absence of specific laws or hospital policies, a physician must rely on
> four guiding ethical principles—autonomy, benevolence, beneficence, and
> justice—to determine when law enforcement should have access to a
> patient. What these principles mean and questions to ask oneself to ensure
> they are being applied correctly are as follows:
>
> •    The principle of autonomy refers to the patient's right to make
> decisions regarding his or her own medical care without being influenced
> or coerced by outside parties.  Is the patient actually under arrest or in

---

[51] Revised June 4, 2013, available at
https://community.corporatecompliance.org/HigherLogic/System/Download
DocumentFile.ashx?DocumentFileKey=129e6da4-7a3d-4a20-a4d9-356a729356cd .

[52] *Id*. at 3.

police custody, or are the police simply accompanying the patient with the intent to question him or her?  What are the local laws with regard to these patients?

- Benevolence refers to the physician's responsibility to prevent "deliberate, unnecessary, or avoidable harm to patients." Does the police presence impede the patient's care or violate their trust or privacy?

- The principle of beneficence requires that the physician have a positive impact on the patient's health.  Is the presence of law enforcement benefiting the patient in some way?

- The principle of justice delineates that all patients should be treated equally regardless of their personal or financial situation.  Is the patient receiving the same care and being treated with the same respect that any other person arriving in the trauma bay would expect to receive?[53]

The Defendants' reliance on Or. St. 133.621 also fails.  In fact, the statute supports the Plaintiff's position that the Hospital had a duty to protect her and had no duty to honor the demands of a police officer to assist him in forcing Ms. Behringer to do his bidding, providing, "Nothing in in this section shall be interpreted as requiring a duly licensed physician to act at the request of a peace officer."[54]

At this stage of the proceedings, the Hospital Defendants cannot assert a blanket claim that their conduct was medically acceptable, when the Plaintiff has

---

[53] Katherine Ott, M.D., *et al.*, "To Protect and Serve: The Ethical Dilemma of Allowing Police Access to Trauma Patients," Bulletin of the American College of Surgeons, October 4, 2017, available at https://bulletin.facs.org/2017/10/to-protect-and-serve-the-ethical-dilemma-of-allowing-police-access-to-trauma-patients (last visited March 9, 2022).

[54] OR. ST. 133.621.

cited not only specific painful, dangerous, unnecessary conduct that is not supported by the legal and medical literature.  Like most determinations of reasonableness, this finding likely will be best left to a jury.

## IV.    Private Medical Providers Can be Subject to Claims of Constitutional Violations.

For a medical provider to be subject to 1983 liability, the Ninth Circuit requires that the hospital's involvement must be the specific activity about which the Plaintiff complains and the involvement must be significant.[55]  The key determination is the medical provider's intent.  "A party is subject to the Fourth Amendment only when he or she has formed the necessary intent to assist in the government's investigative or administrative functions."[56]

Here, the only reason the Defendants stripped her and catheterized her, was because law enforcement demanded a urine sample.  This sample not only was unnecessary for the State's prosecution – the State also had her blood[57] -- but the procedure, itself was unnecessary.  The Complaint states that Ms. Behringer was willing to provide a urine sample – just not while a male officer was

---

[55] *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308, 313 (9th Cir. 1974) and *Ascherman v. Presbyterian Hosp. of Pacific Med. Ctr.*, 507 F.2d 1103 (9th Cir. 1974).

[56] *George v. Edholm*, 752 F.3d 1206, 1217 (9th Cir. 2014), citing *Harvey v. Plains Twp. Police Dep't.*, 421 F.3d 185, 196 n. 13 (3d Cir.2005).

[57] ECF Doc. 1 at 9, Paras. 52, 54.

watching her provide it.[58]  This whole incident could have been avoided, if the hospital had prioritized the wellbeing of the patient, instead of blindly assisting law enforcement.

**V.    The Individual Hospital Defendants' Insistence that the Plaintiff Show that the They Followed a Specific Hospital Policy Fails as a Matter of Law.**

The Hospital Defendants appear to argue that, to hold the both the Hospital and individual actors responsible for Constitutional violations, the Plaintiff's Complaint must describe a specific policy maintained by the hospital. Neither the law nor Complaint's factual allegations support their argument. The Hospital's assertion that a Plaintiff, to succeed in a civil rights claim "against an employee or individual" must show the employee followed a custom or policy of the entity" is a flat-out misstatement of established civil rights law in three ways.

A plaintiff is not required to show the individual medical providers acted pursuant to a custom or policy of the agency.  Individual actors absolutely can be held accountable for their conduct in their individual capacity.

The Hospital Defendants cite no precedent that supports their position. Rather, they point to one unpublished district court decision from California that found that a hospital system could not be held responsible for the conduct of two

---

[58]  *Id*. at 9, Para. 51 and at 10, Paras. 59.

of its doctors.  The decision did not state that, for the individual doctors to be held responsible, they had to act pursuant to a hospital policy. [59]  In that case, a *pro se* plaintiff alleged a series of byzantine claims that alleged, in essence, that a private hospital was a state actor, when its doctors reported a diagnosis of vertigo to the State of California DMV, causing the plaintiff to lose his driving privileges and pilot's license.[60]

The Eastern District of California found that neither the doctors nor the hospital were state actors in that context:

> . . . [T]o the extent plaintiff's constitutional claims against Sutter are based on the conduct of Dr. Buss or Dr. Popke, that conduct alone is not enough to establish liability.  To hold Sutter liable for acts of the doctors, plaintiff must show that Sutter is a state actor and that the doctors committed the alleged constitutional violations according to the official policy or custom of the hospital.[61]

In no way does that language, from a trial court decision in another district, create a requirement that, for a Plaintiff to hold individual actors responsible for constitutional violations, the Plaintiff must show that they acted pursuant to a policy of their employer.

## VI.    The Complaint Demonstrates that the Hospital Maintained an Unconstitutional Policy, Pattern, or Practice Under *Monell*.

---

[59]  *Schneider v. Sutter Amador Hosp.*, 2014 WL 5473545 *8.

[60]  *Id.* at *3-5.

[61]  *Id.* at *8.

The Hospital cites no binding precedent to support its argument that its responsibility falls under *Monell*.  However, in preparing this response, the Plaintiff has confirmed that the Ninth Circuit has ruled that *Monell's respondeat superior* limitation applies to private entities.[62]  Because the Hospital appears to agree that the *Monell* framework applies to it regarding the civil rights violations committed by its employees and contractors, the Plaintiff will be amending her Complaint to assert a *Monell* claim against the Hospital

A.    *The Complaint Supports a <u>Monell</u> Claim Against the Hospital.*

To establish *Monell* liability against the Hospital, the Plaintiff must prove:

(1) She possessed a constitutional right of which she was deprived;

(2) that the Hospital had a policy;

(3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right;  and,

(4) that the policy is the moving force behind the constitutional violation."[63]

Policymakers are deliberately indifferent when "in light of the duties assigned to the specific . . . employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

---

[62]  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

[63]  *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation marks and citation omitted).

constitutional rights."[64]  A plaintiff can prove a *Monell* claim in one or two ways. Either way supports a finding that the municipality is liable for the deprivation of a plaintiff's constitutional rights.

### 1.    Existence of a Policy

First, a plaintiff can prove a *Monell* claim by showing a formal policy existed, which is "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[65]  When pursuing a *Monell* claim stemming from a formal policy, a plaintiff must prove that the municipality "acted with the state of mind required to prove the underlying violation."[66]

Second, a plaintiff can prove a *Monell* claim by showing an informal policy. An informal policy exists when a plaintiff can prove the existence of a widespread practice that, although not authorized by an ordinance or an express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law."[67]  Such a practice, however, cannot ordinarily be

---

[64] *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995).

[65] *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) (plurality opinion).

[66] *Tsao,* 698 F.3d at 1143-44 (internal quotation marks omitted).

[67] *Praprotnik,* 485 U.S. 112, 127 (1980)(internal quotation marks omitted).

established by a single constitutional deprivation, a random act, or an isolated event.[68]   Rather, Plaintiff must show a pattern of similar incidents for the factfinder to conclude that the alleged informal policy was "so permanent and well settled" as to carry the force of law.[69]

### 2.    Deliberate Indifference to Constitutional Rights of Others.

Second, a plaintiff an prove a *Monell* claim with evidence that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional deprivation.  To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation.[70]

### 3.    Ratification

The Hospital is liable for a constitutional violation under the theory of ratification, if an authorized policymaker approves a subordinate's decision and the basis for it.[71]

---

[68]  *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir. 1999).

[69]  *See, Praproptnik*, 485 U.S. at 127.

[70]  *Farmer v. Brennan,* 511 U.S. 825, 841 (1994).

[71]  *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004).

B.      *The Complaint States Facts in Support of a Pattern and Practice, Constituting a Policy.*

"Pattern" is one way in which a Plaintiff can make a *Monell* claim. She also can show a policy of an agency, if it was ordered from a decision maker. Once a policy is established, *Monell* requires only one application of that policy.[72]

Here, the correspondence cited in the Complaint makes a *prima facie* showing that the hospital maintained a policy and practice of conducting forced catheterizations to assist law enforcement in its investigations. The Hospital stated, "Assisting law enforcement in evidence collection is something we are often asked to do"[73] and "The process is unpleasant enough and we should make every effort to reduce the negative impact it can have on [the patient]."[74] These two statements, taken alone, show that the hospital does this procedure for law enforcement regularly and that the Hospital knows that it can have a "negative impact" on the patient. The statements also show, at this early stage of the case, the Hospital's deliberate indifference for the interests of those same patients.

---

[72] *Pembauer*, 475 U.S. at 480.

[73] ECF Doc. 1 at 11, Para. 66.

[74] *Id.*

C.    *The Complaint States Facts in Support of the Hospital's Ratification of the Conduct and, Thus, a Policy.*

The Hospital's letter quoted in the Complaint also shows that the Hospital has ratified the unconstitutional conduct. The letter states that "our team, along with hospital leadership, began a review of your care, to include your medical record, and care protocols for patients with your presentation.  Our review found care appropriate as assisting law enforcement with evidence collection is something we often are asked to do."[75]

This letter shows that not only did hospital leadership – the policy makers – review the episode with the Plaintiff, but it also reviewed the "care protocols for patients with [Plaintiff's] presentation."  So, taking all allegations in the Complaint as true, the hospital leadership reviewed the care protocols for people brought into the hospital to be forcibly catheterized at the behest of law enforcement and approved that conduct.  That approval constitutes ratification under *Monell*.

## VII.   Taking the Allegations in the Complaint as True, the Hospital Defendants Knowingly Conspired to Violate Ms. Behringer's Constitutional Rights.

Civil conspiracy is a combination of two or more persons, who, by some concerted action, intend to accomplish some unlawful objective for the purpose

---

[75]  *Id.*

*Behringer v. City of Ashland, et al.*
Response to Hospital Defendants' Motion to Dismiss

of harming another, which results in damage.[76]  The plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."[77]  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."[78]  A defendant's knowledge of the of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of a defendant's actions."[79]

Here, the Defendants explicitly agreed catheterize Ms. Behringer, because she refused to urinate while Defendant McCready – a male police officer – watched.  The Complaint outlines the circumstantial and overt evidence that supports a finding that the Complaint fully satisfies the elements of civil conspiracy:

--      the hospital staff actively participated in the exact conduct that violated Ms. Behringer's Fourth Amendment right to be free of unreasonable searches, to include: the stripping of her from the waist down, exposing her genitals;  allowing the police officer to stand in front of

[76]  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)

[77]  *Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir.1990) (citation and internal quotation marks omitted).

[78]  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (*en banc*).

[79]  *Gilbrook*, 177 F.3d at 856-57.

*Behringer v. City of Ashland, et al.*
Response to Hospital Defendants' Motion to Dismiss

Ms. Behringer to observe this procedure; and forcing a catheter into her urethra – with no pain mitigation;[80]

--      the arresting officer threatens Ms. Behringer, saying "do you know what they [the hospital staff] do you if you don't urinate?"[81]  This is direct evidence that the hospital works with the police to conduct forced catheterizations when suspects will not provide a urine sample.  Taking all facts and inferences in the Plaintiff's favor, this statement also supports the conclusion that the intent of the hospital staff is not only to collect evidence, but to retaliate against suspects who do not cooperate with law enforcement's demands;

--      Providence Health Services blamed Ms. Behringer for the event, writing, "it is believed that the Ashland police officer provided you multiple opportunities to comply with his orders. The officer advised you of possible physical force to allow staff to complete the procedure." [82]  This statement further supports the allegation that the hospital, rather than protecting the interest of its patient, agreed with the officer to conduct this procedure;

--      the hospital in its correspondence also stated that collection of evidence for law enforcement is something "we are often asked to do" and "If we can avoid taking part with [sic] this, we do."[83]

This statement, quoted directly from the Hospital's correspondence to Ms.

Behringer, provides direct evidence that the hospital conducts this procedure

"often" at the behest of law enforcement.  The Hospital knows with it is

collecting evidence, as opposed to providing medical care.  It also knows that

---

[80]  ECF Doc. 1 at 10, Paras. 60-63.

[81]  *Id*. at Para. 59.

[82]  *Id*. at 11, Para. 66.

[83]  *Id*.

this practice has a punitive aspect to it, underscoring the fact that the Hospital acted intentionally with Ms. Behringer.

**CONCLUSION**

For the foregoing reasons, the Plaintiff respectfully asks this Court to deny Defendants Providence Health Services' Motion to Dismiss. Alternatively, the Plaintiff asks this Court to grant leave to amend her complaint further, according to the Court's rulings on the Providence Health Services' Motion.

Respectfully submitted this Ninth day of March, 2022.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 5,543 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Respectfully submitted this Ninth Day of March, 2022.

<u>s/Joy Bertrand</u>
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Joy Bertrand, do hereby certify that on March 9, 2022, I filed the

foregoing via the United State District Court of Oregon's ECF system.  Based on

my training and experience with electronic filing in the federal courts, it is my

understanding that opposing counsel will be served via e-filing, upon its

submission to the Court.

Respectfully submitted this Ninth day of March, 2022.

s/Joy Bertrand
Joy Bertrand
Attorney for Plaintiff