IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

LIESE BEHRINGER,                                          Case No. 1:21-cv-01520-CL

                    Plaintiff,

        v.

                                                         FINDINGS AND
                                                         RECOMMENDATION

CITY OF ASHLAND, PROVIDENCE
HEALTH CARE, TIGHE O'MEARA,
JUSTIN MCCREADIE, JOHN DOE,
JANE DOE, ET AL.

                    Defendants.

_____

CLARKE, Magistrate Judge.

        This case comes before the Court on Plaintiff's motion to amend the complaint and

Defendant Providence Health Care's motion to dismiss. Oral argument was heard on April 19,

2022, and again on June 28, 2022, in Medford, Oregon.  For the reasons set forth below, the

Court recommends that the Motion to Amend (#17) be GRANTED, and the Motion to Dismiss

(#11) be DENIED.

## BACKGROUND

Plaintiff alleges that defendants are culpable under 42 U.S.C. 1983 and Oregon law for forcibly catheterizing her in the view of a male police officer in the course of a misdemeanor driving under the influence investigation, despite already having procured her blood.

On October 19, 2019, Plaintiff was arrested in Ashland, Oregon, on suspicion of driving under the influence. Plaintiff alleges that she was unable to provide a breath sample due to a health condition that requires her to use an oxygen regulator to breathe. Plaintiff alleges that the arresting officer, Defendant Justin McCreadie ("McCreadie"), insisted that she provide a urine sample in his full view, which Plaintiff refused. McCreadie then obtained a search warrant for both a urine and a blood sample, but Plaintiff alleges that the warrant did not authorize the method of catheterization to obtain the urine sample. Upon receipt of the warrant, McCreadie transported Plaintiff to the Hospital Defendants' healthcare facility.

Plaintiff alleges that once at the hospital, she had two blood samples taken from her. Plaintiff alleges that she was willing to also provide a urine sample, just not in the presence of a male officer. Amended Complaint ¶ 4 (#17-1). At some point after the blood samples were obtained, Plaintiff alleges that McCreadie says to her "Do you know what they do to you if you don't urinate?" *Id.* ¶ 59. Plaintiff alleges that she was willing to submit to a urine sample, just not in the presence of a male police officer. *Id.* ¶ 4. Plaintiff alleges that despite her lack of consent, John and Jane Doe medical staff forcibly stripped Plaintiff from the waist down, opened her legs, exposed her genitals, and inserted a catheter into her genitals while McCreadie stood directly in front of Plaintiff. *Id.* ¶¶ 2, 4, 59-62. Plaintiff alleges that John and Jane Doe did nothing to protect her privacy and did nothing to mitigate the pain of the catheterization.

Plaintiff alleges that the forced catheterization caused her a painful urinary tract infection, suffering, and emotional distress.

After the incident, Plaintiff called the Hospital Defendants to complain about the treatment she received.  Plaintiff alleges that she received a written response from a patient care liaison for Hospital Defendants, which stated, "our team, along with hospital leadership, began a review of your care, to include your medical record, and care protocols for patients with your presentation. Our review found care appropriate as assisting law enforcement with evidence collection is something we often are asked to do." Amended Complaint ¶ 66.  The letter further states that, "It is believed that the Ashland police officer provided you multiple opportunities to comply with his orders. The officer advised you of the possible use of physical force to allow staff to complete the procedure." *Id.*  The letter explains that the "process is unpleasant enough and we should make every effort to reduce the negative impact it can have on [the patient]." *Id.*  The letter further explains that "[t]here is no written policy or protocol that specifically outlines what should be done in this process and when as our officers are asked to use a common sense approach to these situations." *Id.*  The hospital sent Plaintiff a bill for $1,100.24 for the catheter procedure.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."  This rule represents a "strong policy permitting amendment." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir.1991).  The liberality of the rule is qualified by the requirement that the amendment not cause undue prejudice to the opposing party, is not sought in bad faith, and is not futile.

Pursuant to Rule 12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief may be granted. In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

Dismissal under Rule 12(b)(6) is proper "if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (internal citation omitted).

## DISCUSSION

Plaintiff's Amended Complaint (#17-1) attached to Plaintiff's motion for leave to amend is treated as the operative complaint for analyzing the motion to dismiss. The Court recommends that the motion to dismiss be denied because the motion ultimately attempts to hold Plaintiff's Amended Complaint to a standard higher than the pleading standard.

**I.      Plaintiff's claims brought under 42 U.S.C. § 1983 are sufficiently plead.**

The Hospital Defendants move to dismiss Plaintiff's claims brought under 42 U.S.C. §

1983 because they argue that Plaintiff has not adequately alleged that they were state actors and

because Plaintiff failed to show that a constitutionally protected right was violated.

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege facts to

establish that the defendants acted under the color of state law. *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 188 (1970) (Brennan, J., concurring).  Section 1983 liability extends to a private party

if "there is such a 'close nexus between the State and the challenged action' that seemingly

private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn.*

*Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*,

419 U.S. 345, 351 (1974)).  Such a nexus may exist when, for instance, private action "results

from the State's exercise of 'coercive power,'" or "when the State provides 'significant

encouragement, either overt or covert,'" to the private actor.  *Id.* at 296 (quoting *Blum v.*

*Yaretsky*, 457 U.S. 991, 1004 (1982)).

Whether a private party engaged in state action is a highly factual question. *Brunette v.*

*Humane Soc'y*, 294 F.3d 1205, 1209 (9th Cir. 2022) (citing *Burton v. Wilmington Parking Auth.*,

365 U.S. 715, 722 (1961)).  The Supreme Court has articulated four tests for determining

whether a private party's actions amount to state action: (1) the public function test; (2) the joint

action test; (3) the state compulsion test; and (4) the governmental nexus test.  *Franklin v. Fox*,

312 F.3d 423, 444-45 (9th Cir. 2002).  The Court need not go through each test at this time.  At

this stage in the litigation, Plaintiff need only allege facts that establish a plausible nexus

between the State and the Hospital Defendants' actions.  Accepting all the facts alleged in the

Amended Complaint as true, Plaintiff has sufficiently alleged such a nexus.  Plaintiff alleged that

she was brought to Defendants' hospital by Officer McCreadie for the purpose of obtaining a

blood and urine sample. Plaintiff alleged that she did not require medical care. Plaintiff alleged

that Officer McCreadie stated to Plaintiff in front of medical staff "Do you know what they do to

you if you don't urinate?" Moreover, Plaintiff alleged that medical staff gave McCreadie "at

least tacit, if not explicit permission" to stand directly in front of Plaintiff while the medical staff

forced a catheter into her genitals. Based on these facts, the Hospital Defendants may be found

to have acted as an instrument or agent of the State in executing the search on Plaintiff.

Furthermore, the Amended Complaint alleges that three separate constitutional rights

were violated by defendants: the right to be free from unreasonable searches; the right to be free

from a search that exceeds the scope of a warrant; and the right to be free from excessive force in

the course of executing a search. Whether inserting a catheter to procure a urine sample in full

view of a police officer violates a clearly defined constitutional right is a premature inquiry for

this Court to consider. The Court also disagrees that the language of the warrant is necessary in

order for Hospital Defendants to respond to the pleadings and pursue its defense of this action.

Whether the search exceeded the scope of the warrant is a question reserved for summary

judgment or possibly a jury. At this stage in the litigation, Plaintiff's allegations that the warrant

did not authorize catheterization, that the search exceeded the warrant, and that the search

equated to excessive force are sufficient to state claims for unreasonable search and seizure.

## II.     Hospital Defendants' reliance on ORS 133.621 is premature.

The Hospital Defendants have cited ORS 133.621 to argue that they cannot be held liable

for collecting evidence in a criminal investigation. Under ORS 133.621, "a duly licensed

physician, or a person acting under the direction or control of a duly licensed physician, shall not

be held civilly liable for gathering potential evidence in a criminal investigation in a *medically*

*acceptable manner* at the request of a peace officer." (emphasis added). Accepting all the

allegations in the Amended Complaint as true, serious questions remain as to whether or not the

conduct alleged here is considered medically acceptable. Plaintiff has alleged that the conduct

was painful, dangerous, unnecessary, and unsupported by medical literature. Therefore, ORS

133.621 does not provide grounds to dismiss any of the claims brought in Plaintiff's Amended

Complaint at this time.

**III.   Plaintiff has alleged sufficient facts to state a plausible claim for conspiracy**

In the Amended Complaint, Plaintiff's first cause of action is for conspiracy to violate

civil rights under 42 U.S.C. § 1983, brought against all defendants. To have an actionable

conspiracy claim, Plaintiff must establish (1) the existence of an express or implied agreement

among the defendants to deprive plaintiff of her constitutional rights; and (2) an actual

deprivation of that right resulting from the agreement. *Ting v. United States*, 927 F.2d 1504,

1512 (9th Cir. 1991). The Hospital Defendants move to dismiss the conspiracy claim on the

grounds that Plaintiff failed to allege facts that show a "meeting of the minds" took place or that

defendants agreed to violate Plaintiff's constitutional rights. The Court disagrees.

Plaintiff has alleged facts sufficient to state a plausible claim for conspiracy. Plaintiff

alleges that the Hospital Defendants agreed to perform the catheterization procedure at law

enforcement's direction and allowed law enforcement to be in the room and witness the

procedure take place. Plaintiff did not need medical care, so the Hospital Defendants had no

reason to perform the procedure other than law enforcement requested it be done. These facts

are sufficient to allege an express or implied agreement among the defendants to perform the

conduct alleged.

#### IV.    Plaintiff has alleged sufficient facts to state a *Monell* claim.

The Amended Complaint includes a *Monell* claim against the Hospital Defendants. According to Plaintiff, this claim was added in response to defendant's suggestion that the *Monell* framework applies to civil rights violations committed by its employees and contractors. Hospital Defendants argue that the amendment is improper.

To state a claim under *Monell* against a private entity, a plaintiff must show that the entity (1) acted under color of state law; and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom. *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1139 (9th Cir. 2012). The policy may be one of action or inaction. To successfully show that there was a policy of inaction, the inaction must be the result of a conscious or deliberate choice made from various alternatives. *Lee v. City of L.A.,* 250 F.3d 668, 681 (9th Cir. 2001). To prove deliberate indifference to the plaintiff's constitutional right, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation. *Farmer v. Brennan,* 511 U.S. 825, 841 (1994); *see also Canton v. Harris,* 489 U.S. 378, 390 (1989) (noting that when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need"). Plaintiff can also establish that there was a policy by showing that an official with final policymaking authority approved or ratified the decision of a subordinate. *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005)

As stated above, Plaintiff has alleged sufficient facts to state a plausible nexus between the State and the Hospital Defendants' actions to plead that the Hospital Defendants were acting under the color of state law. The Court also finds that Plaintiff has alleged facts sufficient to

establish that the Hospital Defendants had an official policy or custom that caused the alleged

constitutional violations to occur. Included in the Amended Complaint is a letter from the

Hospital in which it states, "our team, along with hospital leadership, began a review of your

care, to include your medical record, and care protocols for patients with your presentation. Our

review found care appropriate as assisting law enforcement with evidence collection is

something we often are asked to do." Amended Complaint ¶ 66. The letter explains that the

"process is unpleasant enough and we should make every effort to reduce the negative impact it

can have on [the patient]." *Id.* The letter further states that "[t]here is no written policy or

protocol that specifically outlines what should be done in this process and when as our officers

are asked to use a common sense approach to these situations." *Id.* With the inclusion of these

facts, Plaintiff has sufficiently alleged that hospital leadership reviewed and approved the actions

of subordinate medical staff in the incident involving Plaintiff and possibly in other similar

instances "for patients with [Plaintiff's] presentation." Plaintiff has also sufficiently alleged

deliberate indifference by showing that the Hospital was often asked to collect evidence for law

enforcement and made the choice not to have a written policy or protocol in place to address

what should be done during this process. Also included in the Amended Complaint are citations

to medical literature that condemn forced catheterizations. Together, these facts are sufficient to

allege that the Hospital had at least constructive notice that its omission of policy or lack of

training would likely result in a constitutional violation.

### V.    Plaintiff's respondeat superior claim will be interpreted as a theory of liability to be applied to Plaintiff's Oregon tort claims.

Hospital Defendants have moved to dismiss Plaintiff's respondeat superior claim on the

grounds that respondeat superior is not an independent cause of action, but rather a theory of

liability. *See Fidelity Nat. Title. Ins. Co. v. Castle*, 2011 U.S. Dist. LEXIS 141297 (N.D. Cal.

Dec 8, 2011) (noting as much and dismissing respondeat superior cause of action). As discussed above, a municipality or private entity cannot be held liable under Section 1983 on a respondeat superior theory for an employee's actions outside the scope of the employer's policies or customs. However, the respondeat superior theory of liability can be applied to state tort claims brought against an employer for the torts committed by its employees. In Plaintiff's Amended Complaint, she lists "Count Six Respondeat Superior Liability" before her tort claims for battery, assault, IIED, and negligence. Therefore, the Court will interpret Plaintiff's respondent superior claim as a theory of liability to be applied to Plaintiff's tort claims against the Hospital Defendants.

## **RECOMMENDATION**

For the foregoing reasons, Plaintiff's Motion to Amend (#17) should be GRANTED. Hospital Defendants' Motion to Dismiss (#11) should be DENIED.

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 26 day of July, 2021.

MARK D. CLARKE
United States Magistrate Judge