IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| LIESE BEHRINGER, | Civ. No. 1:21-cv-01520-CL |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| CITY OF ASHLAND; PROVIDENCE HEALTH & SERVICES—OREGON; TIGHE O'MEARA; JUSTIN MCCREADIE; JANE AND JOHN DOE ASHLAND POLICE OFFICERS; JOHN AND JANE ROE PROVIDENCE HEATLH & SERVICES EMPLOYEES; ABC CORPORATIONS I-X; BLACK AND WHITE PARTNERSHIPS I-X; SOLE PROPRIETORSHIPS OR TRUSTS I-X,, | |
| Defendants. | |

AIKEN, District Judge.

This case comes before the Court on a Motion for Preliminary Injunction, ECF No. 87, filed by Plaintiff. The Court heard oral argument on the motion on August 23, 2024. ECF No. 118. For the reasons set forth below, the motion is DENIED.

### LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary

injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing on one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## BACKGROUND

The following recitation of facts is based on the pleadings and the submitted exhibits. The Court has particularly considered the video exhibits, which included police bodycam footage.

On the evening of October 19, 2019, Plaintiff Liese Behringer was driving in the City of Ashland when she was pulled over by Defendant Justin McCreadie, an Ashland police officer. After interacting with Plaintiff, McCreadie became suspicious that Plaintiff was impaired. McCreadie asked Plaintiff to perform field sobriety tests

("FST"). Plaintiff refused to perform FST. Plaintiff was placed under arrest. A search of Plaintiff's car revealed marijuana.

Plaintiff was transported to the Ashland Police Station and taken to the Intoxilyzer room where she was given the opportunity to call an attorney. Plaintiff breathed into the breathalyzer machine but did so with insufficient force to generate an accurate reading. Plaintiff maintains that she was unable to provide a sample, but McCreadie believed that Plaintiff was deliberately failing to provide a breath sample. Armstrong Decl. Ex. 2, at 7. ECF No. 101.

McCreadie believed, based on the presence of marijuana in the car, that Plaintiff was under the influence of something other than alcohol or under the influence of a combination of intoxicants. McCreadie Decl. ¶ 6. ECF No. 97. McCreadie applied for a warrant for the collection of Plaintiff's blood and urine. Armosino Decl. Ex. 4. ECF No. 98. A Jackson County Circuit Court judge found that there was probable cause and issued a warrant for the collection of Plaintiff's blood and urine with the assistance of a qualified medical professional. Armstrong Decl. Ex. 4. The warrant was to be executed within four hours. *Id.* At the time, the Oregon Crime Lab required urine to test for the presence of drugs. McCreadie Decl. ¶ 8. The Oregon Crime Lab only tested blood for alcohol at the time. Armstrong Decl. Ex. 2, at 9-10.

After receiving the warrant, McCreadie transported Plaintiff to Providence Medford Medical Center, operated by Defendant Providence Health & Services—Oregon ("Providence"). Plaintiff was belligerent and shouting when she arrived at

Page 3 –OPINION & ORDER

the hospital. On the bodycam video, Plaintiff's speech is slurred, sometimes difficult to understand, and occasionally incoherent. Prior to the collection of blood or urine, McCreadie read the contents of the warrant to Plaintiff. Armosino Decl. Ex. 1B. 0:6:55. When hospital staff attempted to take Plaintiff's blood pressure, Plaintiff began flailing and screaming "You are not!" and "I'm not fucking cooperating!" Armosino Decl. Ex. 1B, 04:05, 05:56. Hospital staff were able to take a blood sample while Plaintiff was handcuffed.

McCreadie asked Plaintiff to provide a voluntary urine sample. Plaintiff refused to provide a sample unless McCreadie would take her home. McCreadie explained that he would not take her home and that she would be taken to the jail. McCreadie warned Plaintiff that if she did not provide a voluntary urine sample, a sample would be collected via catheter and briefly explained the process of catheterization. McCreadie repeatedly asked Plaintiff to provide a voluntary urine sample and Plaintiff refused. McCreadie told Plaintiff that if she was willing to provide a urine sample, he would remove the handcuffs and allow her to go into the bathroom with a cup for the sample.[1] Plaintiff responded "Tie me down. Do your shit; I don't care." Armosino Decl. Ex. 1B, at 23:30. Hospital staff also asked Plaintiff to provide a voluntary sample and Plaintiff declined and continued to shout at McCreadie and hospital staff. McCreadie asked Plaintiff again to provide a urine

---

[1] The video evidence on this issue is contrary to Plaintiff's assertion that she was willing to give a urine sample "just not in the presence of a male officer." Pl. Mot. 9. On the bodycam video, Plaintiff expressed a willingness to give a urine sample if McCreadie would take her home rather than to jail. Plaintiff repeatedly refused entreaties to provide a voluntary sample in the privacy of the hospital bathroom.

Page 4 –OPINION & ORDER

sample, warning her that the alternative was the use of the catheter. Plaintiff responded "I'm glad. I hope it's pleasurable for you." Armosino Decl. Ex. 1B, at 25:05. Plaintiff was handcuffed to the bed. McCreadie and the hospital staff asked Plaintiff a final time to provide a voluntary sample, to which she replied "No, do it." Armosino Decl. Ex. 1B, at 26:16. Hospital staff collected the urine sample via catheterization. Plaintiff did not cooperate with the collection of the urine sample.[2] Throughout the process of collection, Plaintiff shouted "Come on, take a look-see!" at McCreadie and "This is rape!" at hospital staff. Armosino Decl. Ex. 1B, at 27:00; 28:40. Contrary to Plaintiff's claims, the bodycam footage shows that McCreadie turned and faced away from the bed while the sample was collected.

After the urine sample was collected, Plaintiff was taken to the jail. At the jail, Plaintiff successfully provided a breath sample for the breathalyzer at 11:00 p.m. Plaintiff's BAC was 0.14%, despite being collected three hours after her arrest. McCreadie Decl. ¶ 12. This suggests that Plaintiff's degree of intoxication was substantially greater at the time of her arrest.

Analysis of Plaintiff's urine returned a positive result for five controlled substances. McCreadie Decl. ¶ 12. Plaintiff subsequently pleaded guilty to DUII. Armosino Decl. Ex. 3.

---

[2] Defendants suggested at oral argument that, based on Plaintiff's statements leading up to her catheterization in which she invited, or perhaps dared, McCreadie and hospital staff to catheterize her, that Plaintiff voluntarily submitted to catheterization. Plaintiff asserts that the catheterization was involuntary. It is not necessary for the Court to resolve this issue and the Court will assume, for purposes of this motion, that the urine sample was collected via non-voluntary catheterization.

Page 5 –OPINION & ORDER

**DISCUSSION**

In the Amended Complaint, ECF No. 29, Plaintiff brings claims for (1) conspiracy to violate civil rights pursuant to 42 U.S.C. § 1983; (2) violation of Plaintiff's Fourth and Fourteenth Amendment rights, alleging forced catheterization, exceeding the scope of the search warrant, and excessive force; (3) *Monell* liability; (4) *respondeat superior* liability as to Defendant Providence Health & Services—Oregon ("Providence"); (5) battery as to McCreadie, the Doe and Roe Defendants, and Providence; (6) assault as to McCreadie, the Doe and Roe Defendants, and Providence; (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress.

Plaintiff seeks an injunction (1) ordering the City of Ashland to "immediately end its practice of seeking urine samples *via* non-consensual catheterization in misdemeanor DUI and DUII investigations" and (2) ordering Providence Health & Services – Oregon to "immediately end its practice of collecting evidence for law enforcement *via* non-consensual urinary catheterization." Pl. Mot. 6. ECF No. 87.

**I.      Irreparable Harm**

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131. Here, Plaintiff has failed to show that she is likely to be subjected to catheterization a second time by Defendants. In assessing the likelihood of Plaintiff being involuntary catheterized, it is useful to examine the sequence of events that led to the use of the catheter in October 2019. First, Plaintiff drove while intoxicated and was stopped by

McCreadie. Next, Plaintiff refused to perform FST. Plaintiff failed, whether intentionally or as a result of a medical condition, to provide a breath sample. McCreadie then made a showing of probable cause to a circuit court judge that was sufficient to convince the judge to issue a warrant for the collection of Plaintiff's blood and urine. Plaintiff refused repeated entreaties by McCreadie and hospital staff to provide a voluntary urine sample, even after being warned that a catheter would be used if she did not provide a voluntary sample. Only then did hospital staff catheterize Plaintiff to collect the urine sample. The existence of so many safeguards, particularly the issuance of a warrant, demonstrate that the use of involuntary catheterization is not done routinely or casually by Defendants. It also indicates that the likelihood of Plaintiff being subjected to the procedure a second time is remote.[3]

Although Plaintiff argues that there is a pattern or practice of performing involuntary catheterizations, but Plaintiff has not presented any evidence of anyone other than herself who was involuntary catheterized by Defendants in the course of a DUII investigation.

A preliminary injunction is an extraordinary remedy and Plaintiff has failed to demonstrate that irreparable harm is *likely* in the absence of injunctive relief, as opposed to merely possible. The Court concludes that this factor weighs sharply against the issuance of a preliminary injunction.

---

[3] The Court also notes that Plaintiff filed her motion nearly five years after the events giving rise to her claim and nearly three years after the filing of this action. Plaintiff does not suggest in her briefing that she had been threatened with involuntary catheterization during that time. Nor does she identify any other instances of involuntary catheterization to suggest that the practice is routine or widespread.

Page 7 –OPINION & ORDER

## II.  Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

Here, Plaintiff's motion presumes the existence of a constitutional violation without substantively engaging with her burden to demonstrate likelihood of success on the merits.  Plaintiff does not, for instance, challenge the existence of probable cause or the propriety of the warrant.  Plaintiff's motion appears to presume that catheterization is per se unreasonable, for which Plaintiff cites *Ellis v. City of San Diego*, 176 F.3d 1183 (9th Cir. 1999).  Pl. Mot. 8.  This overstates the holding of *Ellis*. In *Ellis*, the Ninth Circuit held that blood and urine tests are searches that are subject to the constraints of the Fourth Amendment and that a warrantless blood or urine test was unreasonable unless supported by both probable cause and exigent circumstances and that, even if supported, might still be unreasonable if excessive force was employed.  *Id.* at 1191-92.  Significantly, the Ninth Circuit's holding focused on the fact that the district court had granted a motion to dismiss and, accepting as true the plaintiff's "allegations regarding the absence of any basis for the body search and his contentions regarding the use of excessive force," the defendants were not

entitled to qualified immunity. *Id.* at 1192. Here, the Court considers a motion for preliminary injunction, which entails consideration of evidence rather than merely allegations. In addition, the record shows that a warrant was issued for the collection of Plaintiff's urine, which required a demonstration of probable cause to a neutral magistrate and materially distinguishes the facts of this case from those of *Ellis*.

As to Plaintiff's *Monell* claim,[4] to hold the City of Ashland or Providence liable Plaintiff must show that the constitutional violation was caused by (1) an official policy, (2) a pervasive practice or custom, (3) a failure to train, supervise or discipline, or (4) a decision or act by a final policymaker. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019). A plaintiff may also demonstrate that a an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Here, Plaintiff does not identify any other instances of involuntary catheterization. Her *Monell* claim is supported only by the fact that neither Providence or the City of Ashland have affirmatively disavowed the disputed practice and by the City of Ashland's determination that McCreadie had not acted improperly in his investigation of Plaintiff's DUII. The Court concludes that this is an insufficient showing to support a preliminary injunction.

Finally, Plaintiff makes a number of arguments based on Oregon law. Plaintiff argues that under the implied consent statute, ORS 813.131, McCreadie was not permitted to seek a urine sample from Plaintiff. The statute provides:

---

[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Page 9 –OPINION & ORDER

> A police officer may not request a urine test unless the officer is certified by the Department of Public Safety Standards and Training as having completed at least eight hours of training in recognition of drug impaired driving and the officer has a reasonable suspicion that the person arrested has been driving while under the influence of an intoxicant other than intoxicating liquor or a combination of intoxicants.

ORS 813.131(3).

Here, the parties dispute whether McCreadie had the necessary qualifications to request a urine sample. However, McCreadie did not seek a urine sample from Plaintiff under the implied consent statutes. Instead, he applied for and received a warrant for Plaintiff's urine from a circuit court judge. Under those circumstances, it is irrelevant whether McCreadie had the necessary training to request a warrantless urine sample from Plaintiff based on implied consent.

In sum, the Court is not convinced that Plaintiff has made a sufficient showing of likely success on the merits to support an injunction. However, even if the Court were to accept, for the purposes of this motion, that Plaintiff had demonstrated a likelihood of success on the merits or serious questions going to the merits, Plaintiff's failure to carry her burden on the likelihood of irreparable harm would prevent an injunction from issuing.

## III. Balance of the Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains*

*Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the government is a party, these last two factors of the preliminary injunction analysis will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, the Court notes that the State of Oregon has enacted a number of statutes authorizing healthcare workers to assist police with DUII investigations and, in certain situations, shielding them from liability. *See* ORS 133.621 (authorizing licensed physicians and those acting under the direction of physicians to "withdraw bodily substances" to "gather evidence in a criminal investigation" and providing that they "shall not be held civilly liable for gathering evidence in a criminal investigation in a medically reasonable manner at the request of a peace officer."); ORS 676.300 (authorizing healthcare providers to notify law enforcement if they believe a patient is going to drive while intoxicated and shielding them from liability for making such reports); ORS 676.260 (obliging healthcare providers to report to police the results of blood tests showing intoxicants following motor vehicle accidents); ORS 676.280 (shielding healthcare providers from liability for reporting blood alcohol levels). These statutes reflect a broad policy of permitting, or in some instances requiring, healthcare providers to assist police with DUII investigations and shielding them from the liability arising from that assistance. Granting the requested injunction as to Providence would run contrary to that public interest.

In addition, the injunction Plaintiff requests would be effectively impossible to implement. Plaintiff seeks to enjoin involuntary catheterization in "misdemeanor" DUII investigations, impliedly conceding that involuntary catheterization may be

permissible in cases of felony DUII. In Oregon, a DUII becomes a felony if the defendant has at least two prior convictions for DUII within a certain timeframe. ORS 813.011(1). This accounts for convictions in other jurisdiction, which might require a close comparison of the statutes of other states to those of Oregon, and the answer might well turn on information that is not available to the investigating officer. More to the point, whether a DUII is a misdemeanor or a felony is a charging decision made by the prosecuting attorney, rather than the investigating officer. It would be impracticable to make the distinction between misdemeanor and felony DUII investigations that Plaintiff's motion seeks.[5]

The Court concludes that the balance of the equities and the public interest weigh against granting the requested injunction.

## CONCLUSION

Even if the Court were to accept, for purposes of this motion, that there are at least serious questions going to the merits of Plaintiff's claims, the other *Winter* factors weigh strongly against the requested injunction. Plaintiff's Motion for a Preliminary Injunction, ECF No. 87, is therefore DENIED.

It is so ORDERED and DATED this ___4th___ day of September 2024.

 /s/Ann Aiken
ANN AIKEN
United States District Judge

---

[5] Of note, in October 2019 Plaintiff had a prior conviction for DUII in Oregon from 2014, Armstrong Decl. Ex. 6, and testified to previous arrests for DUII in other states but could not recall how many arrests. Armstrong Decl. Ex. 1, at 6.