UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

LIESE BEHRINGER,

      Plaintiff,

    v.

CITY OF ASHLAND; PROVIDENCE
HEALTH & SERVICES – OREGON; TIEGH
O'MEARA, *Chief of City of Ashland Police
Department, in his official capacity*; JUSTIN
MCCREADIE, *in his individual capacity*;
JOHN and JANE DOES, *Ashland Police
Officers, in their individual capacities*; JOHN
and JANE ROES, *Providence Health &
Services – Oregon employees*; ABC
CORPORATIONS I-X; BLACK AND
WHITE PARTNERSHIPS I-X; and SOLE
PROPRIETORSHIPS OR TRUSTS I-X,

      Defendants.

Case No. 1:21-cv-01520-CL

**FINDINGS AND
RECOMMENDATION**

---

**CLARKE,** United States Magistrate Judge.

Plaintiff Liese Behringer brings this civil rights action against Defendants City of

Ashland ("City"), Ashland Police Chief Tighe O'Meara, and Ashland Police Officer Justin

McCreadie, as well as Providence Health & Services – Oregon ("Providence"), and Providence

employees. The Court refers to the non-plaintiff parties collectively as "Defendants."

Page 1 — FINDINGS AND RECOMMENDATION

The case comes before the Court on Providence Defendants' Motion for Summary Judgment ("Providence's Mot."), ECF No. 132, City Defendants' Motion for Summary Judgment ("City's Mot."), ECF No. 133, and Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Mot."), ECF No. 135. The Court held oral argument on April 30, 2025. For the reasons below, the Court recommends granting City's motion, granting in part and denying in part Providence's motion, and denying Plaintiff's motion.

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). The court cannot weigh the evidence or determine the truth; it may only determine whether there is a genuine issue of fact. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux*, 263 F.3d at 1076. In assessing whether

a party has met its burden, the court views the evidence in the light most favorable to the nonmoving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995).

## BACKGROUND

On the evening of October 19, 2019, Plaintiff was driving in the City of Ashland when she was pulled over by Officer McCreadie, an Ashland police officer. After interacting with Plaintiff, Officer McCreadie became suspicious that Plaintiff was impaired. Officer McCreadie asked Plaintiff to perform field sobriety tests ("FST"). Plaintiff refused to perform FST. Officer McCreadie placed Plaintiff under arrest. A search of Plaintiff's car revealed marijuana and a closed bottle of vodka. Pl.'s Mot., Ex. 1 ("Search Warrant Affidavit and Warrant") at 3, ECF No. 135-1.

Plaintiff was transported to the Ashland Police Station and taken to the Intoxilyzer room where she was given the opportunity to call an attorney. Plaintiff breathed into the breathalyzer machine but did so with insufficient force to generate an accurate reading. Officer McCreadie believed that Plaintiff was deliberately failing to provide a breath sample. Officer McCreadie may have been aware that Plaintiff had an Albuterol prescription and an oxygen device in her car. Armstrong Decl. Ex. 2 ("McCreadie Depo.") at 91:3–22, ECF No. 101-2. Whether Plaintiff's medical condition prevented her from exhaling a sufficient force to generate an accurate reading, or whether she refused, remains in dispute.

Based on the presence of marijuana in Plaintiff's car, Officer McCreadie believed that Plaintiff was under the influence of something other than alcohol or under the influence of a combination of intoxicants. McCreadie Decl. ¶ 6, ECF No. 97. At the time of Plaintiff's arrest, the Oregon Crime Lab required urine to test for the presence of drugs and only tested blood for the presence of alcohol. McCreadie Decl. ¶ 8.; McCreadie Depo. at 94:20–25 95:1–7.

Officer McCreadie filled out a form affidavit in support of an application for a search warrant for the collection of Plaintiff's blood and urine. Officer McCreadie selected on the form that he had probable cause to believe that evidence of the crime of driving under the influence of intoxicants ("DUII") was "located on the person of" Plaintiff. *Id.* at 4. Officer McCreadie asked a Jackson County Circuit Court judge to "issue a warrant commanding any police officer, with the assistance of a qualified lab technician, to seize" a blood sample and a urine sample from Plaintiff. *Id.* In deposition, Officer McCreadie could not recall if he disclosed to the judge that the collection of Plaintiff's urine might involve catheterization. McCreadie Depo. at 101:20–25. The judge signed the form search warrant and selected the following two boxes:

> [X] You are therefore commanded to take <u>a blood</u> sample from the above-named person with the assistance of a qualified medical professional.

> [X] You are therefore commanded to take <u>a urine</u> sample from the above-named person with the assistance of a qualified medical professional.

Search Warrant Affidavit and Warrant at 5 (underlines and "Xs" by hand in original).

After receiving the warrant, Officer McCreadie transported Plaintiff to Providence Medical Center in Medford, Oregon, operated by Defendant Providence. Officer McCreadie explained in deposition that, despite being closer in proximity, officers in the Ashland Police Department stopped bringing arrestees to Ashland Community Hospital to execute search warrants for bodily fluids because the medical staff there "were questioning" and "didn't want to draw anything based on a search warrant." McCreadie Depo. at 102:7–15.

When Plaintiff arrived at Providence, she was shouting, and her speech was slurred. When hospital staff attempted to take Plaintiff's blood pressure, Plaintiff began flailing and screaming "You are not!" and "I'm not fucking cooperating!" Armosino Decl. Ex. 1B ("Bodycam Video") at 04:05, 05:56. Plaintiff asked for water, asked for her handcuffs to be

removed, and asked for her inhalers. Plaintiff was provided a small amount of water, but Officer McCreadie stated that he could not remove Plaintiff's handcuffs unless she was going to the bathroom to produce a urine sample. Plaintiff also begged for her inhalers and was told by Providence nurse, Heidi Jones ("R.N. Jones"), "you'll get them when you get to jail." 20:40–45. Plaintiff strongly opposed providing a blood sample. Officer McCreadie read the contents of the warrant to Plaintiff, and she remained still while R.N. Jones, took a blood sample from Plaintiff. Sec. Armstong Decl. Ex. 1, ECF No. 134-1.

Officer McCreadie then asked Plaintiff to provide a urine sample by peeing in a cup. Plaintiff refused to provide a sample unless Officer McCreadie would take her home. Officer McCreadie explained that he would not take her home and that she would be taken to the jail. Officer McCreadie described the warrant to Plaintiff as "a warrant for you to provide urine into a cup." Bodycam video 1B at 16:57–17:03. Officer McCreadie warned Plaintiff that if she did not provide a voluntary urine sample, a sample would be collected via catheter and briefly explained the process of catheterization. Officer McCreadie repeatedly asked Plaintiff to provide a voluntary urine sample and Plaintiff refused. Officer McCreadie told Plaintiff that if she was willing to provide a urine sample, he would remove the handcuffs and allow her to go into the bathroom with a cup for the sample. Plaintiff responded "Tie me down. Do your shit; I don't care." Bodycam Video at 23:30. In response, R.N. Jones instructed Plaintiff:

> [y]ou have two choices you can sit on the toilet, and you can pee in the toilet into a hat, or your second choice is we're going to hold you down, and I'm going to stick a tube in your bladder. We're not going to sit around here and jack around all night. Two choices you're either going to make it easy on yourself or you're going to make it hard on yourself.

*Id.* at 23:44. Officer McCreadie asked Plaintiff again to provide a urine sample, warning her that the alternative was the use of the catheter. Plaintiff responded "I'm glad. I hope it's pleasurable for you." *Id.* at 25:05. Officer McCreadie and the hospital staff asked Plaintiff a final time to

Page 5 — FINDINGS AND RECOMMENDATION

provide a voluntary sample, to which she replied "No, do it." *Id.* at 26:16. R.N. Less than ten minutes elapsed between when Officer McCreadie first asked Plaintiff to willingly provide a urine sample and when R.N. Jones instructed Plaintiff to remove her pants for catheterization. *Id.* at 16:57–26:30.

R.N. Jones catheterized Plaintiff. Sec. Armstrong Decl. Ex. 2 ("Jones Depo.") at 11:17–20, ECF No. 134-2. Plaintiff remained still during the procedure, which lasted approximately two minutes. Jones Depo. at 25:10–26:10. During the procedure, Plaintiff screamed and shouted, "this is rape!" She also told Officer McCreadie, who was in the room but turned away during the procedure, to "come on, take a look-see!" *Id.* at 27:00; 28:40. Plaintiff was covered by a sheet during the procedure to protect her privacy. Jones Depo. at 17:4–18:6. R.N. Jones ensured that the catheter kit was sterile. Following catheterization, Plaintiff stopped shouting. Officer McCreadie removed Plaintiff's handcuffs while she remained lying in the hospital bed, and R.N. Jones provided Plaintiff with albuterol.

In deposition, R.N. Jones testified, "I had never done a forced catheterization prior to this while working at Medford. And I had never seen it done." Jones Depo. at 11:17–19. Providence nurse, Courtney McCambridge ("R.N. McCambridge"), who was also present that night, testified in deposition that she could not recall any other instances of when an arrestee was brought in with police with a search warrant and refused to give a urine sample. Sec. Armstrong Decl. Ex. 2 ("McCambridge Depo.") at 14:1–5, ECF No. 134-3.

After collecting the urine sample, Officer McCreadie drove Plaintiff to jail. At the jail, Plaintiff successfully provided a breath sample for the breathalyzer at 11:00 p.m. Plaintiff's BAC was 0.14%, despite being collected three hours after her arrest. McCreadie Decl. ¶ 12. This suggests that Plaintiff's degree of intoxication was substantially greater at the time of her arrest.

Analysis of Plaintiff's urine returned a positive result for five controlled substances. McCreadie Decl. ¶ 12. Plaintiff subsequently pleaded guilty to DUII. Armosino Decl. Ex. 3, ECF No. 98-2.

## DISCUSSION

Plaintiff brings claims under federal law for the alleged violation of her constitutional rights. She also brings tort claims under Oregon law including battery, assault, and intentional infliction of emotional distress. Plaintiff has raised a question of material fact regarding whether her constitutional rights were violated when the Defendants forcibly catheterized her to seize a urine sample for evidence collection purposes. However, because Officer McCreadie should be entitled to qualified immunity, Plaintiff's unreasonable search and seizure claim should only proceed against R.N. Jones. Plaintiff's *Monell* claim against City should fail because there is no evidence that Officer McCreadie acted pursuant to a City policy. Plaintiff's *Monell* claim against Providence should proceed because material facts remain in dispute about whether R.N. Jones acted pursuant to a Providence policy. Plaintiff's other constitutional claims and all of her state law claims should not survive summary judgment.

## I.    Section 1983 Claims

Plaintiff brings claims under 42 U.S.C. § 1983, asserting that by conducting a nonconsensual catheterization, Defendants deprived her of her constitutional right to be free from unreasonable search and seizure. Defendants and Plaintiff filed cross motions for summary judgment. The Court finds that the reasonableness of the search remains in dispute.

### A.    Providence and Providence Staff Acted Under Color of Law

Providence argues that it cannot be held liable under § 1983 because neither it nor its staff acted under color of law. The Court disagrees.

When prosecuting a civil rights claim under § 1983, a plaintiff must establish that (1) a person acting under color of law (2) deprived the plaintiff of a federal right. 42 U.S.C. § 1983;

Page 7 — FINDINGS AND RECOMMENDATION

*Stein v. Ryan*, 662 F.3d 1114, 1118 (9th Cir. 2011). Liability under § 1983 arises upon a showing of personal participation by each defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"Acting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West v. Atkins*, 487 U.S. 42, 46 (1988)). A private actor is only liable under § 1983 if the plaintiff can prove that the alleged injury was caused by "state action." *Jensen v. Lane Cnty.*, 222 F.3d 570, 574 (9th Cir. 2000). Whether a defendant was acting under color of state law is determined by the court. *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021). "Courts must engage in 'sifting facts and weighing circumstances' to answer what is 'necessarily a fact-bound inquiry.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

The Ninth Circuit has "recognized at least four different general tests that may aid us in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003)). "These tests are interrelated, and they are designed to answer the same key question: whether the conduct of a private actor is fairly attributable to the State." *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023).

"[P]rivate parties may act under color of state law when they perform actions under which the state owes constitutional obligations to those affected." *Rawson*, 975 F.3d at 753. The collection of blood and urine samples for law enforcement purposes is a search, "subject to the constraints of the Fourth Amendment[.]" *Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191 (9th Cir. 1999), *as amended on denial of reh'g* (June 23, 1999). "A private party's search may be attributed to the state when 'the private party acted as an instrument or agent of the Government'

Page 8 — FINDINGS AND RECOMMENDATION

in conducting the search." *Skinner v. Ry. Lab. Executives' Ass'n*, 489 U.S. 602, 614 (1989). (quoting *George v. Edholm*, 752 F.3d 1206, 1215 (9th Cir. 2014)).

Here, Providence and its staff acted pursuant to a search warrant that commanded the collection of a blood sample and a urine sample for law enforcement purposes. Plaintiff was not brought to the hospital to receive medical treatment, and the blood draw and catheterization were not medically necessary. These actions were taken in concert with Officer McCreadie who was acting within the scope of his official duties. There is no dispute that the conduct of Providence and its staff "is fairly attributable to the State." *O'Handley*, 62 F.4th at 1157. Plaintiff may proceed on her § 1983 claims against Providence and its staff.

### B. Defendants should be Entitled to Summary Judgment as to Count One — Conspiracy to Violate Civil Rights

Defendants argue that that there is no evidence that Defendants conspired to violate Plaintiff's rights.

To prove a conspiracy under § 1983, "a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (internal quotation marks omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). In addition, the plaintiff must show that the defendants acted jointly and that some overt act was done in furtherance of the conspiracy. *Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 200 (9th Cir. 1974). The agreement, however, "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino Environmental Center*, 192 F.3d at 1301. That is because "[d]irect evidence of improper motive or an agreement among the parties

to violate a plaintiff's constitutional rights will only rarely be available." *Id.* at 1302. "Moreover, 'questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment.'" *Id.* (brackets omitted) (quoting *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)).

Here, Plaintiff argues that Defendants' "objective was to obtain a forced urine sample via catheterization." Pl.'s Resp. to Providence at 21, ECF No. 145. The Court disagrees. The reasonableness of Defendants' decision to obtain a urine sample by catheterization following Plaintiff's repeated refusals to voluntarily produce a urine sample is discussed below. Constitutional reasonableness under the Fourth Amendment does not depend on the actual motivations of the defendants involved. *See Whren v. United States*, 517 U.S. 806, 813 (1996). In contrast, a claim for conspiracy to violate a constitutional right requires evidence that the defendants acted with the intent of depriving the plaintiff of a constitutional right. *Mendocino Env't Ctr.*, 192 F.3d at 1301. The record shows that Defendants acted with the intent of obtaining a urine sample for law enforcement purposes pursuant to a search warrant. Plaintiff fails to present direct or indirect evidence that Defendants acted with the improper motive of depriving Plaintiff of a constitutional right. The Court recommends granting summary judgment in favor of Defendants for this claim.

### C.    Fourth and Fourteenth Amendment Claims

Plaintiff argues catheterization to obtain a urine sample for a DUII investigation was an unreasonable intrusion into her body, exceeded the scope of the search warrant, and was an excessive use of force. Defendants argue that following Plaintiff's refusal, it was objectively reasonable to catheterize Plaintiff pursuant to a search warrant that commanded the collection of a urine sample by a qualified medical provider. The Court finds that whether the search was reasonable under the totality of the circumstances remains in dispute.

1.    The Doe and Roe Defendants, Except R.N. Jones, should be Entitled to Summary Judgment

As a preliminary matter, Plaintiff has not amended the operative complaint or filed a notice substituting the Doe and Roe defendants for specifically named individuals. The record shows that while in police custody, Plaintiff interacted with Officer McCreadie and Providence staff members Dr. Jeanette Grimaldi, R.N. Heidi Jones, and R.N. Courtney McCambridge, presumably, the Roe defendant employees of Providence. Plaintiff has not presented evidence of wrongdoing by any Doe defendant employed by City or the Ashland Police Department.

A plaintiff in a § 1983 action must establish that the defendant's conduct was the actionable cause of the claimed injury, which requires both causation in fact and proximate cause. *See Chaudhry v. Aragon*, 68 F.4th 1161, 1169–70 (9th Cir. 2023). To be liable under § 1983, the defendant "must be more than a mere bystander." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020).

Plaintiff fails to present evidence creating a dispute of fact about whether Dr. Grimaldi or R.N. McCambridge caused Plaintiff's catheterization, a material fact from which Plaintiff's Fourth and Fourteenth Amendment claims arise. Dr. Grimaldi conducted a medical clearance of Plaintiff. When asked in deposition about evidence collection of bodily fluids pursuant to a search warrant, Dr. Grimaldi testified that she was not involved in the process. Grimaldi Depo. at 24:5–9, ECF No. 145-6. Similarly, R.N. McCambridge was in the room with Plaintiff but did not conduct the catheterization. McCambridge Depo. at 13:18, ECF No. 134-3 ("I didn't do this catheter."). In contrast, there is no dispute that R.N. Jones catheterized Plaintiff. Jones Depo. at 11:17–20, ECF No. 134-2 ("I had never done a forced catheterization prior to this while working at Medford."). Because Plaintiff fails to present evidence creating a dispute of fact about whether Dr. Grimaldi or R.N. McCambridge caused the deprivation of Plaintiff's constitutional rights, the

Court recommends granting summary judgment in favor of Dr. Grimaldi and R.N. McCambridge on Plaintiff's Fourth and Fourteenth Amendment claims (counts two through four). The claims against R.N. Jones are addressed with the claims against Officer McCreadie, below.

### 2. The Reasonableness of the Search Remains in Dispute — Count Two

The motions before the Court center around resolution of whether, under the totality of the circumstances, it was reasonable to forcibly catheterize Plaintiff to obtain a urine sample.

"[S]tate-compelled collection and testing of urine . . . constitutes a 'search' subject to the demands of the Fourth Amendment." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). "The Fourth Amendment requires that a nonconsensual physical search of a suspect's body, like any other nonconsensual search, be reasonable." *George*, 752 F.3d at 1217.[1] Reasonableness "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner*, 489 U.S. at 619. "A body search, however, requires 'a more substantial justification' than other searches." *George*, 752 F.3d at 1217 (quoting *Winston v. Lee*, 470 U.S. 753, 767 (1985)).

"[T]he question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers." *Winston*, 470 U.S. at 760. Even when a search is conducted pursuant to a valid warrant, the Fourth Amendment prohibits "intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966).

In determining the reasonableness of a nonconsensual physical search of a suspect's body, the Ninth Circuit has instructed courts to weigh the three primary factors identified in *Winston v. Lee*, 470 U.S. 753 (1985). *George*, 752 F.3d at 1217. "Those factors are (1) 'the

---

[1] "[T]he Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers[.]" *Vernonia Sch. Dist. 47J*, 515 U.S. at 652.

Page 12 — FINDINGS AND RECOMMENDATION

extent to which the procedure may threaten the safety or health of the individual,' (2) 'the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity,' and (3) 'the community's interest in fairly and accurately determining guilt or innocence.'" *Id.* (quoting *Winston*, 470 U.S. at 761–62). The Court addresses each factor in turn and finds that material facts remain in dispute. Whether the search was reasonable should be decided by a jury.

### a) Threat to Health or Safety

The first factor examines the extent to which the procedure may threaten the health or safety of the individual. *Winston*, 470 U.S. at 761. In addition to the risk of physical harm, this factor considers whether the defendant took "reasonable steps to mitigate the anxiety, discomfort, and humiliation that the suspect may suffer." *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976). Given the substantial potential for emotional harm when conducting an invasive search of a suspect's body, officers should go "beyond the usual procedural requirements." *Id.* For example, the warrant should define "the scope of the search, so that the suspect will know what procedures he faces." *Id.* at 259. "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Schmerber*, 384 U.S. at 770. Detailed warrants can deescalate the situation by "clarif[ying] the means of seizure the government may employ, which may in turn secure the cooperation of the suspect, reducing the risk of physical trauma attendant with removing evidence from a suspect's body." *United States v. Fowlkes*, 804 F.3d 954, 966 (9th Cir. 2015). The suspect's consent also decreases the risk of emotional trauma. *See id.*

Here, there is no dispute that inserting a tube into the urethra causes discomfort and pain. Catheterization also presents a minor risk of infection and, in the worst-case scenario, an injury to the urethra or bladder such as perforation. Grimaldi Depo. at 78:24–79:7. R.N. Jones reduced the risk of infection by conducting the catheterization according to sterile procedures. Plaintiff

asserts that the catheterization caused her to develop a urinary tract infection. However, Plaintiff fails to cite evidence in the record supporting this assertion.[2] The risk to Plaintiff's physical health was slight but there is no evidence that Plaintiff was physically harmed beyond the immediate pain of the procedure, which lasted approximately two minutes.

Defendants reduced the risk of emotional harm by presenting Plaintiff with a warrant, allowing her the opportunity to voluntarily produce a urine sample, providing a privacy curtain, and conducting the catheterization under sterile procedures by a medical professional. However, whether Defendants should have taken additional steps to reasonably mitigate the anxiety, discomfort, and humiliation suffered by Plaintiff remains in dispute.

For example, whether Defendants reduced the risk of harm to Plaintiff by presenting a warrant that assured her that the search was "conducted in a reasonable manner" remains in dispute. *Cameron*, 538 F.2d at 259.[3] Plaintiff strongly objected to the legality of the blood draw and the collection of a urine sample. She stated, "I'm an American and I don't have to be subjected to this," and she repeatedly asked for a lawyer. Bodycam Video at 3:27–33. Officer McCreadie then read her the warrant, and in response, Plaintiff asked to speak to the judge who signed it. The warrant provided, "[y]ou are therefore commanded to take a urine sample from the above-named person with the assistance of a qualified medical professional." Affidavit and Search Warrant at 5. However, Officer McCreadie later described the warrant to Plaintiff as "a warrant for you to provide urine into a cup. Will you do that willingly?" Bodycam Video at 16:57–17:03. Providing urine into a cup presents far fewer risks than being catheterized. The

---

[2] Plaintiff's disclosure that her primary care physician "may have discoverable information regarding the injuries caused by the catheterization [including] . . . a urinary tract infection." is not a sworn declaration. Pl.'s Ninth Supp. Disclosure Statement at 10, ECF No. 144-1. A statement regarding what this witness may testify about at trial is not evidence in the record.

[3] This factor also relates to Count Three, whether the search was within the scope of the warrant.

record contains disputing evidence about whether catheterization was within the scope of the warrant.

Following Plaintiff's refusal to provide a urine sample, the "preferable approach" would have been for Officer McCreadie to apply for a second warrant that specifically authorized the use of catheterization. *See Dalia v. United States*, 441 U.S. 238, 259 n.22 (1979). The burden of applying for a search warrant in Jackson County through electronic or telephonic means was insubstantial at the time of Plaintiff's arrest. *See State v. Portulano*, 320 Or. App. 335, 344–45 (2022) (citing evidence explaining the process for obtaining an electronic search warrant in Jackson County as early as 2016). In deposition, Officer McCreadie could not recall if he disclosed to the judge that the collection of Plaintiff's urine might involve catheterization. McCreadie Depo. at 101:20–25. Obtaining explicit judicial approval before forcibly catheterizing Plaintiff would have allowed a neutral decisionmaker to balance the need for the catheterization against the intrusion on Plaintiff's Fourth Amendment rights, and if approved, would have provided Plaintiff with greater assurance that the procedure was presumptively lawful.

Whether Plaintiff consented to catheterization and if not, whether it was reasonable to proceed without her consent should also be considered by a jury. In deposition, R.N. Jones testified that "before we even started the catheter itself, [Plaintiff] was screaming, 'This is rape.' That stuck in my head, that she was screaming that without—with no—she was not fighting." Jones Depo. at 25:21–24. Plaintiff's counsel then asked R.N. Jones, "[w]hen [Plaintiff] screamed 'this is rape,' did you believe she was still consenting to the procedure?" Jones Depo. at 26:1–2. R.N. Jones responded, "Yes. She said, 'Just do it.' And that's what she was saying, was, 'Just do it.'" Jones Depo. at 26:3–4. The reasonableness of R.N. Jones's belief that Plaintiff consented to

the procedure is undermined by the way she presented Plaintiff with her options that evening, telling Plaintiff:

> [y]ou have two choices you can sit on the toilet, and you can pee in the toilet into a hat, or your second choice is we're going to hold you down, and I'm going to stick a tube in your bladder. We're not going to sit around here and jack around all night. Two choices you're either going to make it easy on yourself or you're going to make it hard on yourself.

Bodycam video at 23:44.

Viewed in the light most favorable to Plaintiff, the fact that Plaintiff stated, "do it" and then remained still during the procedure does not indicate that she consented. "[T]he person accused of concealing contraband within his body is faced with the real prospect that the most intimate portions of his anatomy will be invaded and that he will suffer resulting pain or even physical harm." *Cameron*, 538 F.2d at 258. A reasonable jury could conclude that Plaintiff felt powerless and remained still to decrease the risk of experiencing physical harm. Plaintiff's expert, Dr. Zackler, opined that Plaintiff's history of trauma, including surviving sexual molestation, "made her unusually susceptible to experiencing serious emotional consequences of the involuntary catheterization." Zackler Report at 1, ECF No. 144-2. The risk of harm to Plaintiff's emotional well-being, measured in part by the extent to which Plaintiff consented to the procedure, therefore remains in dispute.

In summary of the first factor, the physical risk of catheterizing Plaintiff was slight and whether Defendants took adequate steps to mitigate the considerable risk of emotional harm to Plaintiff remains in dispute.

b)    Extent of the Intrusion

The second *Wintson* factor examines the extent of the intrusion upon the plaintiff's dignitary interests in personal privacy and bodily integrity. *Winston*, 470 U.S. at 761.

Defendants argue that because Plaintiff refused to voluntarily produce a urine sample, it was reasonable to catheterize her pursuant to a search warrant that commanded the collection of a urine sample. The warrant and Defendants' repeated pleas for Plaintiff to voluntarily produce a urine sample weigh in favor of a finding that the catheterization was reasonable, but those facts are not dispositive. If that were the case then, after providing an opportunity to urinate in a cup, involuntary catheterizations pursuant to a search warrant would be *per se* reasonable. "That is clearly not the law." *George*, 752 F.3d at 1219. Reasonableness remains subject to judicial review, "based on fact intensive, totality of the circumstances analyses rather than according to categorical rules." *Missouri v. McNeely*, 569 U.S. 141, 158 (2013). Catheterization targets "an area of the body that is highly personal and private." *George*, 752 F.3d at 1218 (quotation marks omitted).

Here, catheterizing Plaintiff was a substantial intrusion on her dignitary interests in personal privacy and bodily integrity. Officer McCreadie handcuffed Plaintiff to the bed and R.N. Jones instructed Plaintiff to remove her pants. City improperly editorializes the record by asserting that Plaintiff taunted Officer McCreadie "without any shame or trepidation" to watch the catheterization. City's Mot. at 6. The bodycam video does not peer into the mind of Plaintiff. Viewed in the light most favorable to Plaintiff, as a coping mechanism to the difficult reality that Plaintiff would be catheterized for refusing to produce inculpatory evidence, Plaintiff acted unabashed. Immediately following catheterization, Plaintiff remarked that she was being denied even "the dignity of pulling up my own pants." Bodycam Video at 29:40–46. There is no dispute that Plaintiff suffered a "'gross personal indignity' far exceeding that involved in a simple blood test." *Ellis*, 176 F.3d at 1192 (quoting *Yanez v. Romero*, 619 F.2d 851, 855 (10th Cir. 1980)).

The extent of the government's intrusion can also be measured by "the availability of alternative methods for conducting the search." *Fowlkes*, 804 F.3d at 963. The Fourth Amendment does "not require a least-restrictive alternative test as determinative of reasonableness," but more reasonable alternatives are relevant to the totality of the circumstances analysis. *Id.* at 965.

Here, Defendants emphasize that Plaintiff was repeatedly asked if she would produce a urine sample in the privacy of a bathroom, which she refused. However, the record also shows that less than ten minutes elapsed between when Officer McCreadie first asked Plaintiff to willingly provide a urine sample and when R.N. Jones instructed Plaintiff to remove her pants for catheterization. Bodycam Video at 16:57–26:30. Whether there was an exigent need to obtain a urine sample remains in dispute. *Compare* Baskerville Report at 3, ECF No. 145-8 ("urine tends to be a lagging indicator of substance use") *with* Search Warrant Affidavit and Warrant at 3, ECF No. 135-1 ("Since controlled substances and inhalants metabolize and dissipate with time, this warrant should be executed as soon as possible."). A reasonable jury could conclude that Defendants should have waited longer and taken additional steps to deescalate prior to catheterization. For example, prior to catheterization, Plaintiff asked for water, asked for her handcuffs to be removed, and asked for her inhalers. Plaintiff was provided a small amount of water, but Officer McCreadie stated that he could not remove Plaintiff's handcuffs unless she was going to the bathroom to produce a urine sample, and after begging for her inhalers, R.N. Jones told Plaintiff, "You'll get them when you get to jail." 20:40–45. However, following catheterization, Officer McCreadie removed Plaintiff's handcuffs while she remained lying in the hospital bed, and R.N. Jones provided Plaintiff with albuterol. A reasonable jury could find that Defendants could have de-escalated the situation by allowing Plaintiff to have her hands

uncuffed and to have her albuterol prior to the catheterization. These alternatives were available, and it would have given Plaintiff more time to calm down and consider providing a voluntary sample, or to be catheterized voluntarily, causing less emotional distress.

Another available alternative to catheterization was relying on the evidence of Plaintiff's intoxication already obtained. For example, in pursuing a DUII charge against Plaintiff, Officer McCreadie could have relied on the presence of marijuana in Plaintiff's car, her admission to imbibing that evening, and the bodycam video which supported Officer McCreadie's observation that Plaintiff appeared intoxicated. This evidence might be less compelling than the results of a urinalysis, "[b]ut the mere fact 'that the suspect is concealing contraband does not authorize government officials to resort to any and all means at their disposal to retrieve it.'" *George*, 752 F.3d at 1219 (quoting *Cameron*, 538 F.2d at 258).

In sum, the warrant, Defendants' repeated efforts to seek a voluntary sample, and the use of a qualified medical professional to complete the procedure all weigh in favor of a finding that Defendants took reasonable steps to mitigate the extent of the intrusion. On balance, however, conducting a nonconsensual catheterization when less intrusive alternatives were available was a significant transgression of Plaintiff's sense of personal dignity and autonomy. A jury must weigh the reasonableness of this search by considering the extent of the intrusion and the available alternatives.

c)      Community Interest

The third *Winston* factor weighs "the intrusiveness of the search against 'the community's interest in fairly and accurately determining guilt or innocence.'" *Id.* at 1220 (quoting *Winston*, 470 U.S. at 762). Courts consider the nature of the crime and the importance of the evidence seized to the prosecution of the crime. *Id.*

Here, driving under the influence of intoxicants creates a substantial risk of serious harm and the community has an interest in prosecuting individuals who endanger the public. But under the circumstances presented, driving under the influence was a misdemeanor offense. Or. Rev. Stat. § ("ORS") 813.010. As compared to a DUII resulting in personal or property damage, the actual harm in this case was relatively minor. As described above, Officer McCreadie had already collected considerable evidence in support of a DUII prosecution. The fact that the Oregon Crime Lab did not test blood for controlled substances at the time of Plaintiff's arrest does not mean that it or the Ashland Police Department *could not* test blood for controlled substances. Drawing all inferences in favor of Plaintiff, the need for a urine sample was a limitation of the government's own making. The intrusiveness of the search far exceeded what was necessary to serve the community's interest in obtaining additional evidence of Plaintiff's crime.

Balancing the three factors above, the Court finds that a reasonable jury could conclude that conducting a nonconsensual catheterization to obtain a urine sample violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure. Material facts which remain in dispute preclude a finding that the search was or was not reasonable as a matter of law.

### 3. The Warrant Was Valid but the Scope of the Warrant Remains in Dispute — Count Three

Plaintiff argues that the warrant was invalid because it failed to describe with particularity that Officer McCreadie was authorized to catheterize Plaintiff and that catheterization exceeded the scope of the warrant. The Court finds that the warrant was valid but that the scope of the warrant should be considered as part of the totality of the circumstances.

The Fourth Amendment to the United States Constitution requires that warrants "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S.

Const. amend. IV. "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection against unreasonable searches and seizures." *Dalia*, 441 U.S. at 257 (footnote and quotation marks omitted).

Here, there is no dispute that the warrant was issued upon a finding of probable cause by a neutral judge. The Court advises that—particularly when contemplating a nonconsensual physical search of a suspect's body—the "preferable approach" when applying for a search warrant is for the officer to specify how he intends to proceed if the suspect is uncooperative. *Id.* at 259 n.22. However, there is no genuine dispute that the warrant particularly described the search and seizure of blood and urine from Plaintiff's body. The importance of seeking express permission from the judge prior to catheterization—and whether catheterization was within the scope of the warrant—speaks to the manner in which the search was conducted. *See id.* at 258. For the reasons explained above, whether the search was conducted in a reasonable manner remains in dispute. Summary judgment should be granted in favor of Defendants on the validity of the warrant and denied on the scope of the warrant.

      4.    <u>Plaintiff's Excessive Use of Force Claim Fails as a Matter of Law — Count Four</u>

Plaintiff argues that a jury should decide whether catheterization was an excessive use of force. The cases cited by Plaintiff as establishing the legal basis for her excessive force claim each involve the force used to effectuate an arrest and apply the factors established by the Supreme Court in *Graham v. Conner*, 490 U.S. 386 (1989). Because the use of force at issue in this case relates to the manner in which Plaintiff was searched, and not the manner in which she was arrested or held, Plaintiff's reliance on *Graham* is misplaced. Plaintiff does not, for example, argue that the use of handcuffs to restrain her to the hospital bed was an excessive use of force.

Rather, she argues that catheterization was unreasonable based on a balancing of the individual rights at issue and governmental interests at stake. Pl.'s Resp. to Providence at 16. The "degree of force employed" is relevant to the reasonableness of the search. *Ellis*, 176 F.3d at 1192. However, that issue is more appropriately addressed by applying the *Winston v. Lee* framework, above. *See George*, 752 F.3d at 1217. Summary judgment should be granted in favor of Defendants on Plaintiff's excessive force claim.

### 5.    Officer McCreadie is Entitled to Qualified Immunity

City argues that even if Officer McCreadie violated Plaintiff's Fourth Amendment rights, he is entitled to qualified immunity because it was not clearly established that his conduct under the totality of the circumstances was unconstitutional. Plaintiff argues that it was clearly established in 2019 that an officer may not use excessive force to effect a search, seizure, or arrest.[4]

"The doctrine of qualified immunity protects government officials from § 1983 liability unless '(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023) (quoting *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)). For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam)). "The question is not whether an earlier case mirrors the specific facts here. Rather, the relevant question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional." *Ballentine v. Tucker*, 28 F.4th 54, 66 (9th Cir. 2022) (cleaned up) (quoting *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013)). The plaintiff

---

[4] Plaintiff also argues that qualified immunity should be abolished. This argument is contrary to well established Supreme Court precedent and carries no weight at the trial court.

bears the burden of proving that the law was clearly established at the time of the constitutional violation. *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023).

The Court finds it troubling that Officer McCreadie chose to catheterize Plaintiff to collect evidence of a misdemeanor DUII offense. Viewed in the light most favorable to Plaintiff, a reasonable jury could find that the search violated Plaintiff's Constitutional right to be free from an unreasonable search or seizure. An officer should not conduct a forced catheterization absent express and specific authorization from a neutral judge.

However, the precedential cases cited by Plaintiff are materially distinguishable because none of them involved a catheterization pursuant to a warrant that "commanded" the officer "to take" the evidence with the assistance of a qualified medical professional. *See e.g.*, *Ellis*, 176 F.3d 1183. Under the circumstances of this case, not every reasonable officer would know that catheterization following an arrestee's refusal to voluntarily provide a urine sample was unconstitutional. The nonprecedential cases cited by plaintiff do not show a consensus clearly establishing that the conduct here violated Plaintiff's rights. *See Riis v. Shaver*, 458 F. Supp. 3d 1130, 1185 (D.S.D. 2020) (collecting cases and showing lack of consensus). Officer McCreadie is entitled to qualified immunity on Plaintiff's § 1983 claim.

### 6.    *Monell* Liability — Count Five

Plaintiff also brings § 1983 claims against City and Providence. Section 1983 liability of a municipality arises only when "action pursuant to official . . . policy of some nature caused a constitutional tort" and not on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–99 (1978). The "official policy" requirement was intended to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The circumstances in

which *Monell* liability may be found under § 1983 are "carefully circumscribed." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1534 (9th Cir. 1995).

A § 1983 plaintiff may establish *Monell* liability in one of three ways:

(1) prove that a county employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the "standard operating procedure" of the county; (2) establish that the individual who committed the constitutional tort was an official with final policy-making authority; or (3) prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations omitted). Whether a particular official has final policy-making authority is a question of state law. *Id.*

In addition to claims based on an official policy, a plaintiff may assert *Monell* claims based on a custom or a failure to train. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Similarly, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But, as the Supreme Court has cautioned, "[a] municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purpose of failure to train." *Id.* at 1360 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 409).

       a)      City and Chief O'Meara Should Be Entitled to Summary Judgment on Plaintiff's *Monell* Claim

City argues that Plaintiff's *Monell* claim should be dismissed because Plaintiff failed to present evidence that City or Chief O'Meara[5] caused the alleged deprivation of Plaintiff's constitutional rights. The Court agrees. According to Plaintiff's own expert, "the actions of Officer Justin McCreadie, and named officers of the Ashland Police Department, were inconsistent with their agency policy and not necessary." Delmore Report at 7, ECF No. 145-1. Plaintiff also fails to respond to City's arguments regarding *Monell* liability. There is no dispute that, when viewed in the light most favorable to Plaintiff, neither City nor Chief O'Meara caused Officer McCreadie or R.N. Jones to violate Plaintiff's rights. Nor has Plaintiff submitted evidence of similar violations showing a pattern indicative of an obvious failure to train. The Court recommends granting summary judgment in favor of City and Chief O'Meara on Count Five.

       b)      Providence Should Not Be Entitled to Summary Judgment on Plaintiff's *Monell* Claim

The Ninth Circuit has extended *Monell* liability to private entities acting under color of law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Providence argues that Plaintiff has not produced evidence of an official policy, attributable to Providence, of using catheters to collect urine samples on behalf of law enforcement. To survive summary judgment, Plaintiff must cite evidence probative of "a direct causal link" between the deprivation of her rights and a policy or practice of Providence. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 404.

---

[5] A suit against a municipal employee in his or her official capacity is treated as a suit against the municipality for which the employee works. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There is no evidence that Chief O'Meara was directly involved with the catheterization of Plaintiff.

Providence had an ongoing practice of assisting law enforcement with evidence collection. In a letter to Plaintiff, Providence explained, "assisting law enforcement with evidence collection is something we are often asked to do." Providence Bill and Letter at 2, ECF No. 87-9. At the time of Plaintiff's arrest, Providence used "Form 3" to document a request from law enforcement for the collection of bodily substances as evidence. Providence's 30(b)(6) witness explained that Form 3 "is really a guide for our clinical staff to know what they can provide [to law enforcement] and it's a form that walks them through the steps." Burnett Depo. at 14:11–14, ECF No. 145-3. These steps included documenting whether the collection was voluntary or involuntary and if involuntary, requiring that a copy of the warrant be provided and attached. The Court agrees with Providence that Form 3 reduces the likelihood that a staff member will conduct an unconstitutional search by requiring a copy of the warrant. However, requiring a warrant is not dispositive. The issue before the Court is whether there is evidence of a causal link between the catheterization of Plaintiff and Providence's practices or policies.

Testimony from Providence's nursing supervisor, 30(b)(6) deponent Alisia Howard, creates a dispute of fact about whether Providence maintained a policy and practice of conducting searches pursuant to a warrant, no matter the circumstances:

> **Q.** Is it, if you know, the policy and practice of Providence Medical Center to catheterize persons presented by law enforcement for urine samples if the person refuses to give a sample willingly?
>
> **A.** It has been done in our emergency department. We are the medical provider providing the procedure that has been requested by a warrant and command from a judge. . . . So we are performing a medical procedure at the request of a warrant.
>
> **Q.** Okay. So is it fair to say the answer is yes, if law enforcement presents with a warrant for urine and the person is not willing to give a sample by peeing in a cup, then Providence's policy and practice is to catheterize the person?
>
> . . .
>
> And please correct me if I am wrong about what I just said.

Page 26 — FINDINGS AND RECOMMENDATION

**A.** At the time, yes, we would execute the catheterization on the order from the judge.

Howard Depo. at 20:21–21:17, ECF No. 145-7. R.N. Jones catheterized Plaintiff in accordance with the policy described by Providence's 30(b)(6) deponent. A policy that orders catheterization, following a refusal to cooperate and pursuant to a warrant for urine, runs counter to the Fourth Amendment which lends itself to few "categorical rules." *McNeely*, 569 U.S. at 158.

Additional evidence also supports a finding that whether Providence was the "the moving force" behind the catheterization of Plaintiff remains in dispute. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 404 (quotation marks omitted). First, the warrant in this case commanded Officer McCreadie to obtain a urine sample from Plaintiff with the assistance of a qualified medical professional; it did not command Providence or its staff to provide assistance. Second, Providence did not train its nurses to know that they had the legal right to refuse a law enforcement officer's request for assistance. Providence's 30(b)(6) Depo. Howard at 20:1–18, ECF No. 145-7 (referencing ORS 133.621, which states that medical professionals are not required to act at the request of a police officer to gather evidence).[6] And third, Officer McCreadie testified that he drove Plaintiff to Providence, despite it being further away, because in his experience, other medical providers such as Ashland Community Hospital were often "questioning" and "didn't want to draw anything based on a search warrant." McCreadie Depo. at 102:7–20. Based on the record before the Court, a jury could find that Providence was "the

---

[6] "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purpose of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 at 409). Plaintiff fails to cite evidence of other constitutional violations by untrained Providence employees and the risks created by the alleged training failures here are not so obvious as to amount to deliberate indifference.

Page 27 — FINDINGS AND RECOMMENDATION

moving force" behind the catheterization of Plaintiff. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 404 (quotation marks omitted).[7]

The Court recommends denying Providence's motion for summary judgment on Plaintiff's claim for *Monell* liability, Count Five.

## II.    State Law Claims

Plaintiff's state law claims include battery, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants argue they are entitled to immunity from liability for the state law claims. The Court agrees.

### A.    Officer McCreadie's Affirmative Defenses

The Court finds that Officer McCreadie should be entitled to apparent authority immunity under ORS 30.265(6)(f) but his other motions as to the state law claims should be denied.

#### 1.    The Substitution Provision of the Oregon Tort Claims Act ("OTCA") Does Not Apply

Officer McCreadie argues that the substitution provision of the OTCA requires substituting him with his public body employer. Under ORS 30.265(3), "[i]f an action is filed against an . . . agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the [statutory cap], the court upon motion shall substitute the public body as the defendant." Plaintiffs in federal court are typically not required to plead a specific amount in damages. Fed. R. Civ. P. 8(a). ORS 30.265(3) does not apply because Plaintiff did not plead an amount of damages "equal to or less than" the statutory cap. That is, the condition precedent, alleged damages in an amount equal to or less than the statutory cap, was not triggered.

Officer McCreadie's reliance on *Blanks v. Univ. of Oregon*, No. 6:17-CV-01578-AA, 2018 WL 4924546 (D. Or. Oct. 10, 2018), in support of his argument that he should be dismissed

---

[7] The Court finds Plaintiff's additional arguments regarding ratification unpersuasive.

from this case, is misplaced. In *Blanks* the court was ruling on a motion to dismiss and the court granted Plaintiff leave to amend her complaint. Here, the pleadings are closed, and the Court is ruling on summary judgment. The Court should not substitute Officer McCreadie based on ORS 30.265(3).

> 2.    Immunity from Liability Under the OTCA

Next, Officer McCreadie argues that he is entitled to summary judgment on Plaintiff's state law claims because his conduct is protected by discretionary immunity and apparent authority immunity.

> a)    Officer McCreadie is not Entitled to Discretionary Immunity —
>       ORS 30.265(6)(c)

Discretionary immunity ensures that public employees acting within the scope of their employment are immune from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." ORS 30.265(6)(c). Discretionary immunity only applies if three elements are met: "The decision must be the result of a choice involving the exercise of judgment; the decision must involve public policy as opposed to the routine day-to-day decision-making of public officials; and the decision must be exercised by a body or person that has the responsibility or authority to make it." *Verardo v. Oregon Dep't of Transportation*, 319 Or. App. 442 (2022) (citing *Turner v. State*, 359 Or. 644, 653 (2016)). Decisions involving public policy include "assessments of policy factors, such as the social, political, financial, or economic effects of implementing a particular plan or of taking no action." *Turner*, 359 Or. at 653. In contrast, "[r]outine discretionary decisions made by governmental employees in the course of their day-to-day

responsibilities are not policy decisions." *Robbins v. City of Medford*, 284 Or. App. 592, 597 (2017).

Here, Officer McCreadie testified that it was the Ashland Police Department's "practice and procedure" during DUII investigation to not seek a blood draw or a urine sample unless the suspect refused a breath test, or the breath sample was below the legal limit. McCreadie Depo. at 98:1–14. Officer McCreadie's decision to seek a warrant to obtain a blood sample and a urine sample may have been made pursuant to a policy, but "the decision itself [wa]s not a policy judgment" entitled to discretionary immunity. *Lowrimore v. Dimmitt*, 310 Or. 291, 296 (1990). Discretionary immunity "does not immunize decisions that simply implement or apply policy." *Hendricks v. State*, 67 Or. App. 453, 456 (1984). Officer McCreadie's decision to proceed with catheterization following Plaintiff's refusal to voluntarily urinate should not be entitled to discretionary immunity.

b)    Officer McCreadie is Entitled to Apparent Authority Immunity — ORS 30.265(6)(f)

Apparent Authority immunity ensures that public employees acting within the scope of their employment are immune from liability for:

> [a]ny claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice.

ORS 30.265(6)(f).

As the Oregon Court of Appeals explains, "the legislature intended to provide immunity to public actors who act without bad faith or malice under a law's 'apparent authority'—that is, in accordance with a plausible construction of the law—but the law on which the public actors relied is unconstitutional, invalid, or inapplicable." *Cruz v. Multnomah Cnty.*, 279 Or. App. 1, 12 (2016). "For the purposes of apparent authority immunity, an 'inapplicable' law includes a law

Page 30 — FINDINGS AND RECOMMENDATION

that is otherwise valid but is misinterpreted by a public actor." *Box v. Dep't of Oregon State Police*, 311 Or. App. 348, 364 (2021). An officer may rely on a warrant to acquire the authority to conduct a search without consent. *See id.* at 379 (an officer may rely on a warrant to acquire the authority to enter without invite).

As explained above, there is no dispute that the search warrant was valid. The issue is whether it was plausible for Officer McCreadie to believe that catheterization was within the scope of the warrant and if so, whether there is evidence that he acted in bad faith or with malice. The warrant commanded that Officer McCreadie take Plaintiff's urine with the assistance of a qualified medical professional. Whether catheterization was within the scope of the warrant and whether it was reasonable under the circumstances to catheterize Plaintiff remains in dispute. However, those material issues relate to objective reasonableness. In contrast, whether Officer McCreadie acted in bad faith or with malice relates to subjective reasonableness. The record does not suggest that Officer McCreadie would have proceeded with catheterization regardless of Plaintiff's cooperation. There is no evidence from which a reasonable jury could conclude that Officer McCreadie's decision to proceed with catheterization was made in bad faith or with malice. After reading the warrant to Plaintiff, Officer McCreadie repeatedly explained to Plaintiff that if she did not provide a urine sample then she would be catheterized pursuant to the warrant. Officer McCreadie's interpretation that catheterization was within the scope of the warrant was plausible. Officer McCreadie should be granted summary judgment on Plaintiff's state law claims because he is entitled to immunity pursuant to ORS 30.265(6)(f).

**B.    Providence and Providence's Staff are Entitled to Immunity on Plaintiff's State Law Claims — ORS 133.621**

Providence argues that it should be granted summary judgment on Plaintiff's state law claims because its staff are entitled to immunity under ORS 133.621, which provides, "a duly

licensed physician, or a person acting under the direction or control of a duly licensed physician, shall not be held civilly liable for gathering potential evidence in a criminal investigation in a *medically acceptable manner* at the request of a peace officer." (emphasis added). Plaintiff responds that whether it was "medically acceptable" to catheterize Plaintiff remains in dispute. The Court finds that the phrase "medically acceptable manner" is narrower than whether the procedure was reasonable under the circumstances.

Resolving the issue requires statutory interpretation. In interpreting an Oregon statute, the Court begins by examining "both the text and context of the statute." *Portland Gen. Elec. Co. v. Bureau of Lab. & Indus.*, 317 Or. 606, 610 (1993). The context of the statute includes "other provisions of the same statute and other related statutes." *Id.* at 611. "If the legislature's intent is clear from the . . . text and context, further inquiry is unnecessary." *Id.*

ORS 133.621 does not define the phrase "medically acceptable manner," but other related statutes provide useful context. The State of Oregon has enacted a number of statutes authorizing healthcare workers to assist law enforcement with DUII investigations and, in certain situations, shielding them from liability. *See* ORS 676.300 (authorizing healthcare providers to notify law enforcement if they believe a patient is going to drive while intoxicated and shielding them from liability for making such reports); ORS 676.260 (obliging healthcare providers to report to police the results of blood tests showing intoxicants following motor vehicle accidents); ORS 676.280 (shielding healthcare providers from liability for reporting blood alcohol levels). These statutes reflect a broad policy implemented by the legislature, of permitting healthcare providers to assist law enforcement with DUII investigations and shielding them from the liability arising from that assistance.

Page 32 — FINDINGS AND RECOMMENDATION

Plaintiff argues that her experts' opinions create a dispute of fact about whether catheterization was medically acceptable under the circumstances. Plaintiff's expert, Dr. Baskerville, opines that under Johns Hopkins's policy, only blood draws pursuant to a warrant are permissible and that even if a policy permits involuntary catheterization, the procedure would only be appropriate "under the specific scenario of a motor vehicle accident resulting in the death or serious bodily injury of another person." Baskerville Report at 4, ECF No. 145-8. Plaintiff's other expert, Dr. Moreno, opines that "[r]equests by law enforcement that violate medical ethics must be consistent with the primary and prima facie duties of care to the patient unless they can justifiably be overridden." Moreno Report, at 2. ECF No. 145-9. In other words, Plaintiff's experts each opine that catheterization of Plaintiff was unreasonable under the circumstances. As described above, that issue remains in dispute. However, based on the text and context of ORS 133.621, the Court finds that the legislature did not intend the phrase "medically acceptable manner" to equate to reasonableness under the circumstances. Rather, the broad policy implemented by Oregon's legislature establishes that the phrase "medically acceptable manner" relates to whether the procedure was conducted with the appropriate tools, techniques, and supervision. Based on the record before the Court, there is no dispute that R.N. Jones conducted Plaintiff's catheterization in a medically acceptable manner. The Court recommends granting summary judgment in favor of Providence and its staff on Plaintiff's state law claims based on immunity under ORS 133.621.

## RECOMMENDATION

For the reasons above, the Court makes the following recommendations:

I.      Plaintiff's Motion for Partial Summary Judgment, ECF No. 135, should be DENIED.

II.     City's Motion for Summary Judgment, ECF No. 133, should be GRANTED.

Page 33 — FINDINGS AND RECOMMENDATION

III.    Providence's Motion for Summary Judgment, ECF No. 132, should be GRANTED in part and DENIED in part:

    A. Count One — Conspiracy: summary judgment should be GRANTED.

    B. Count Two — Unreasonable Search and Seizure: summary judgment should be DENIED.

    C. Count Three — Validity and Scope of the Warrant: summary judgment should be GRANTED as to validity and DENIED as to scope.

    D. Count Four — Excessive Use of Force: summary judgment should be GRANTED.

    E. Count Five — *Monell* Liability: summary judgment should be DENIED.

    F. Counts Six through Ten — State Law Claims: summary judgment should be GRANTED.

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 17 day of October, 2025.

MARK D. CLARKE
United States Magistrate Judge

Page 34 — FINDINGS AND RECOMMENDATION